478 A.2d 1279

Keith GUTHRIE, Robert Garvin, Henry Riebold, Terrence Lockard, Robert K. Thomas, John Shook, Barry Almy and W. Gregory Ferrell, Appellants,

v.

The BOROUGH OF WILKINSBURG, Appellee.

Supreme Court of Pennsylvania.

Argued March 8, 1984.

Decided June 28, 1984.

Ronald P. Koerner, Gatz, Cohen, Segal & Koerner, P.A., Pittsburgh, for appellants.

Paul V. Ressler, Wilkinsburg, Vincent Restauri, Jr., Ambridge, for Borough of Wilkinsburg.

Frank P. Tuplin, Deputy Atty. Gen., Philadelphia, for Commonwealth of Pennsylvania, amici curiae.

Virginia S. Cook, Pittsburgh, for Pennsylvania State Association of Boroughs.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION

McDERMOTT, Justice.

This case tests the outer limits of what procedural rights are required under our Local Agency Law:[1] whether a police officer is entitled to notice and a hearing when his employers place a letter of warning[2] in his personnel file.

1. Act of April 28, 1978, P.L. 202, No. 53, 2 Pa.C.S. § 101 *et seq.*

2. Some of the officers received "warnings," while others received "reprimands." For the purpose of this opinion, we treat both as a letter of criticism, neither altering the legal status of the recipients.

After receiving a number of complaints from citizens alleging abuse and mistreatment by Wilkinsburg police officers, the Wilkinsburg Borough Council convened special sessions to gather information concerning the charges. The Council worked with the Community Advocate Unit of the Pennsylvania Attorney General's Office who had expertise in police abuse inquiries.

In thirteen meetings, forty citizens were interviewed. Subsequently, the Council subpoenaed[3] and interviewed twenty-two Wilkinsburg police officers whose names surfaced in the initial probe.

Upon the conclusion of the inquiry, the Borough Council proposed and adopted six findings and conclusions regarding instances of police misconduct. On December 27, 1979, the Council voted to issue written warnings to seven police officers and to place the warnings in the officers' personnel files. The statements addressed improper or questionable conduct ranging from physical and verbal abuse to instances where regulations and procedures were not adhered to.[4]

3. Borough councils have the power to hold hearings and subpoena witnesses for hearings. Act of February 1, 1966, P.L. 1656, No. 581, § 1014, 53 P.S. § 46014.

4. Exemplary is the following warning issued to Officer Terrence Lockard:
To: Terrence Lockard
From: Wilkinsburg Borough Council
Subject: Warning—Abusive and Unprofessional Language and Conduct
This is an official warning for your use of abusive and unprofessional language and conduct in your interaction as a police officer with various citizens. If your pattern of conduct in this regard does not improve, you will be subject to disciplinary action in the future.
As a result of a Police Abuse Inquiry conducted by Borough Council in conjunction with the Community Advocate Unit of the Pennsylvania Attorney General's Office, Borough Council was presented with information concerning your conduct relating to the arrests of:
William Montgomery—October 5, 1978 (Physical abuse toward William Montgomery)
Cornell Robinson—October 6, 1978 (Physical abuse toward Cornell Robinson)
James McVeigh—October 26, 1978 (Assisting in the misuse of police authority by another officer to resolve a personal dispute)

The officers were allowed to place a counterstatement concerning the charges in their personnel files, but chose not to exercise this option. No further action was taken against the officers: they were not fired, demoted or suspended, nor were their salaries reduced or frozen.

The officers petitioned for review of the Borough Council's actions in the Allegheny County Court of Common Pleas under the Local Agency Law, 2 Pa.C.S. § 752. That court held that the Borough's actions did not constitute an adjudication, and dismissed the case on jurisdictional grounds. The Commonwealth Court, 73 Pa.Cmwlth. 393, 458 A.2d 307, affirmed and we granted allocatur. We now affirm.

█ Whether a hearing and notice is required under the Local Agency Law depends on whether a local agency's actions constitute an adjudication. Section 504 of the Act provides:

§ 504. Hearing and Record

No adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard. All testimony shall be stenographically recorded

Rudy Rudolph and Rodney Rudolph—October 29, 1978 (Verbal abuse toward various individuals and requiring identification from persons in a private residence)

Evidence concerning this conduct came to the attention of Borough Council as a result of the Police Abuse Inquiry mentioned above. In connection with this Inquiry, you appeared before Borough Council and others on July 2, 1979, to answer questions and provide any additional information or documents which you deemed relevant. Your responses at that time have been considered in determining what action Borough Council believes to be appropriate.

· A copy of this warning will be placed in your personnel file and should behavior continue in this manner, disciplinary action will be taken.

This was one of the more serious cases. Two officers received letters questioning their tactics used in conducting an investigation. These latter letters were to be withdrawn from their personnel files after one year.

and a full and complete record shall be kept of the proceedings.

An "adjudication" is defined in Section 101 of the Act as:

Any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made....

■ Thus, for a letter of warning to qualify as an adjudication, requiring notice and a hearing, a two-prong test must be met: 1) the letter must be an agency's final order, decree, decision, determination or ruling and 2) it must impact on a person's personal or property rights, privileges, immunities, duties, liabilities or obligations. *See Kerr v. Commonwealth, Department of State*, 35 Pa.Cmwlth.Ct. 330, 333–34, 385 A.2d 1038, 1039 (1978). ("[A] letter can constitute an adjudication in instances where it is a final directive of final determination by the agency affecting personal or property rights.")[5]

It is evident that the letters of warning in this case constituted a final decision, determination or ruling. The letters embodied the Council's collective decision, and were intended to announce their final action on this matter.

5. *O'Peil v. Commonwealth, Civil Service Commission*, 13 Pa. Cmwlth.Ct. 470, 320 A.2d 461 (1974) (A letter refusing to entertain a hearing to contest a failure to grant a state employee a merit salary increment was not an adjudication.); *McKinley v. State Board of Funeral Directors*, 5 Pa.Cmwlth.Ct. 42, 288 A.2d 840 (1972) (A letter which answered the theoretical question of a funeral director was not an adjudication.); *See also, Standard Lime and Refractories Company v. Commonwealth, Department of Environmental Resources*, 2 Pa. Cmwlth.Ct. 434, 279 A.2d 383 (1971) (Letter which only notified a company of its failure to comply with a timetable and that its case was being referred to DER counsel for further action was not an adjudication.).

In *Callahan v. Pennsylvania State Police*, 494 Pa. 461, 431 A.2d 946 (1981), we held that a Pennsylvania State Policeman was deserving of notice and a hearing to determine his right to employee benefits, statutorily defined rights, and that a letter refusing those benefits was not a valid adjudication because of the State's failure to afford the requisites of notice and an opportunity to be heard.

The crucial question here is whether the letters affected the officers' personal or property rights, privileges, immunities, duties, liabilities or obligations. In government employment situations, under both the Local Agency Law and procedural due process,[6] an employee has been held to possess such a property right if he has an enforceable expectation to continued government employment. That expectation may be guaranteed by statute, contract, or be quasi-contractual, as in tenure. *Amesbury v. Luzerne County Institution District,* 27 Pa.Cmwlth.Ct. 418, 421, 366 A.2d 631, 633 (1976), *citing Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

██ No doubt the officers here had an enforceable property interest in their continued employment as police officers.[7] If the officers were dismissed, suspended or demoted they would have been entitled to notice and a hearing, and an appeal under the Local Agency Law. However, the officers were not removed, suspended or reduced in rank; they were warned about inappropriate conduct. Thus, no property right was implicated here.

In *Sterling v. Commonwealth, Department of Environmental Resources,* 504 Pa. 7, 470 A.2d 101 (1983), we strictly construed the term "demotion," concluding that a state employee whose compensation was reduced by two

6. The analogy to procedural due process is an easy one; the language is very similar, the underlying concerns identical. We speak in terms of procedural due process here as an aid in our discussion. We need not decide whether there was a violation of procedural due process here since the case was fought solely in the sphere of the Local Agency Law.

If we were confronted with the issue, however, we would have to answer that there was no due process violation. Just as there is no property right under the Local Agency Law, no statute protects a local agency employee's right to question an issued warning at a hearing. Likewise, no liberty interest is threatened here as we will discuss later in this opinion.

7. A borough council has the authority to remove, suspend or reduce in rank a borough police officer, 53 P.S. § 46121. But such a removal, suspension or reduction in rank is subject to the civil service system and its protective devices. 53 P.S. §§ 46171, 46191.

steps was not demoted, and thus the employee was not entitled to a hearing under the Civil Service Act. If it was a "faulty premise" in *Sterling* that every disciplinary action resulting in the diminution of compensation is a demotion, it would certainly be faulty to propose that the issuance of a warning is a reduction in rank.[8]

■ The interest appellants are attempting to protect is an intangible one: a clean personnel file looking towards future promotion with the department and/or future employment elsewhere. To have a protectable property interest, "a person must clearly have more than an abstract need or desire for it." *Board of Regents v. Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709. Appellants have failed to establish any concrete injury which has flowed from the issuance of the warnings. The mere theoretical effect on possible promotions or future employment prospects is too abstract to constitute a property interest. Neither due process nor the Local Agency Law can be viewed to protect such remote, future, indirect or speculative rights. *See Beauty Hall, Inc. v. State Board of Cosmetology,* 418 Pa. 225, 210 A.2d 495 (1965).

■ Apart from a property interest, we must also examine whether the action of the Borough intruded upon any personal right, privilege or liberty interest, converting the issuance of the letters into an adjudication. In some instances, government action seriously criticizing an individual has been held to implicate a liberty interest, triggering due process rights.[9] However, a government inspired criti-

8. We also held in *Sterling* that there was no due process violation: "No property interest in government employment exists per se which makes denial of a right of appeal a violation of due process." *Sterling v. Commonwealth, Department of Environmental Resources,* 504 Pa. 7, 14, 470 A.2d 101, 104 (1983).

9. In *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971) the Court stated:

Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.

cism must be combined with a concrete alteration of legal status to justify the invocation of procedural safeguards. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). In government employment cases, the criticism must be coupled with discharge to require notice and hearing requirements.

In *Paul*, the Court said that its prior *Roth* holding did not indicate "that a hearing would be required each time the state in its capacity as employer might be considered responsible for a statement defaming an employee *who continues to be employed." Id.* at 710, 96 S.Ct. at 1165. (Emphasis supplied.) *See Johnson v. University of Pittsburgh*, 435 F.Supp. 1328, 1369–70 (W.D.Pa.1977) ("In cases where a stigma is placed upon the plaintiff as a result of charges of immorality or dishonesty *in connection with the termination* then there must be a notice and a chance to be heard.... Making a person less attractive for employment is not a deprivation of liberty.") *citing, Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977). *See also, Huff v. County of Butler*, 524 F.Supp. 751 (W.D.Pa.1981); *Sullivan v. Brown*, 544 F.2d 279 (6th Cir.1976).

■ The term "personal rights," as used in the Local Agency Law, must be construed to effectuate the purpose of the Act. The law "was enacted to provide a forum for the enforcement of statutory rights where no procedure otherwise exists." *Boehm v. Board of Education, School District of Pittsburgh*, 30 Pa.Cmwlth.Ct. 468, 474, 373 A.2d 1372, 1375 (1977). It was not designed to protect amorphous interests such as theoretical promotional possibilities or employment elsewhere. No statute gives police officers the right to a hearing to challenge the validity of an issued warning, as the Civil Service statute does in the event an officer is removed, suspended, or reduced in rank by a borough. 53 P.S. § 46191. Thus, no statutory right is

However, this broad language was severely limited in *Paul v. Davis*, 424 U.S. 693, 708, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976). *See Horton v. Goose Creek Independent School District*, 690 F.2d 470, 483 (5th Cir.1982) *cert. denied* —— U.S. ——, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983).

involved in the issuance of a written warning under the Local Agency Law.

■ Since the officers here were not discharged, demoted or suspended, there was no concrete alteration of legal status. No personal interest was involved.

■ Finally, we note that there are significant public policy reasons favoring our decision. Public employers require reasonable freedom to quickly sanction their employees when they do wrong. "It is indispensable to good government that a certain amount of discipline be maintained in the public service." *Zeber's Appeal,* 398 Pa. 35, 43, 156 A.2d 821, 825 (1959). The purpose of such an action is not to punish, but to warn and instruct. A warning serves as a "useful tool to help the administrator correct minor problems before they grow into major ones." *Holt v. Board of Education of Webutuk Central School District,* 52 N.Y.2d 625, 633, 439 N.Y.S.2d 839, 843, 422 N.E.2d 499, 503 (1981). Preserving a municipal corporation's flexibility in managing its employees is especially compelling when police officers are involved. *See Fabio v. Civil Service Commission,* 489 Pa. 309, 323–24, 414 A.2d 82, 90 (1980); *Kelley v. Johnson,* 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976). Maintaining the public credibility of a community's police force is vital. Here, charges of misconduct adversely affected the reputation of the entire police force and the Borough Council acted to correct the problem and improve the image of the police force as well as the performance of the individual officers.

Furthermore, forcing municipalities to hold a hearing every time it wishes to sanction an employee could have a deleterious effect. Public employers might choose to look the other way at some infractions rather than expend the time, trouble and expense of a hearing in each instance. The ultimate effect of such a policy would be to allow the performance and image of public employees to slowly deteriorate.

Today's holding allows municipalities the freedom to choose a middle ground between ignoring some infractions

and imposing the more serious statutory sanctions such as discharge, demotion and suspension. We should not disturb this balance by placing another layer of bureaucracy onto the already complex system of managing public employees.

■ In holding as we do, we emphasize that a public employee is not without genuine recourse to protect his reputation. For instance, an employee confronted with the possibility of a letter of warning being placed in his personnel file has the opportunity to respond and place a counter-statement in his personnel file. As we noted earlier, the officers in this case had that option and apparently still have that option to this day.

Further, a public employee would be free to challenge an issued warning under a collective bargaining agreement's grievance procedure and have an unfair or fallacious document removed from a personnel file if an arbitrator finds an abuse to have occurred. 43 P.S. § 1101.903; *See also Holt v. Board of Education of Webutuk Central School, supra,* 52 N.Y.2d at 634, 439 N.Y.S.2d at 844, 422 N.E.2d at 504.[10]

Holding that the letters of warning affect no personal or property rights so to transform the letters into an adjudication under the Local Agency Law, we affirm the order of the Commonwealth Court.

NIX, C.J., concurs in the result.

LARSEN, J., files a dissenting opinion.

PAPADAKOS, J., did not participate in the consideration or decision of this case.

LARSEN, Justice, dissenting.

I agree with the majority's conclusion that the letters at issue in this case constituted final orders within the meaning of 2 Pa.C.S.A. § 101. I disagree with the majority, however, that "[t]he interest appellants are attempting to protect is an intangible one," and that appellants' property rights in this case are merely "remote, future, indirect or

---

**10.** The record in this case does not indicate whether or not appellants had a collective bargaining agreement, or whether they grieved the issued warnings under a grievance procedure.

speculative." (At 257). I would hold that the letters placed in appellants' personnel files affected appellants' interest in their jobs; that those letters constituted an adjudication within the meaning of 2 Pa.C.S.A. § 101; and that this case was properly before the court of common pleas pursuant to the Local Agency Law, 2 Pa.C.S.A. § 752. Accordingly, I dissent.

It is clear in this case that appellants have an enforceable property interest in their continued employment as police officers. (At 256). I would go further and hold that, at least under the Local Agency Law, they also have a legitimate expectation that their continued employment not be arbitrarily undermined by unproven allegations of misconduct placed in their personnel files.[1]

There is no question that a written warning or reprimand placed in a police officer's personnel file will have an adverse effect upon the quality of his continued employment. Such a letter will be reviewed whenever questions concerning promotion, duty assignment, or job reclassification arise; these questions are sure to arise, and when they do, a warning or reprimand will adversely affect an officer's chances of obtaining promotions and special privileges, such as assignments to special police schools, which a police officer may request in order to enhance his knowledge and further his career. In addition, for at least five of the officers involved in this case, there is no assurance that the letters will ever be removed from their files, no matter how exemplary their behavior is in the future. Thus, even

1. In defining those property interests which are protected by the United States Constitution, the United States Supreme Court has held that

[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. *It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.*

*Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) (emphasis added).

assuming that the warnings or reprimands were warranted at the outset, the letters will continue to adversely affect the officers' job status for an indefinite period of time.

In view of these realities, I think it is clear that the negative effects of the letters placed in appellants' files are anything but intangible, remote or speculative. I would hold, therefore, that the placement of the warnings and reprimands in appellants' personnel files constituted an adjudication—a final order affecting their property rights—within the meaning of 2 Pa.C.S.A. § 101.

I also feel it necessary to note that the policy reasons cited by the majority in support of its conclusions are wholly without logic. The majority states that "[p]ublic employers require reasonable freedom to quickly sanction their employees when they do wrong ...." (At 259).

Yet appellee's own conduct belies any overriding need for speed in this case. The letters which are the subject of this case were not issued to appellants until *after* appellee had held thirteen meetings to interview citizens and additional meetings to interview twenty-two police officers. This investigation lasted from November, 1978 through June, 1979, and the report of the investigation was not submitted to the borough council for its consideration until December, 1979.

Further, there is no way for a public employer to know whether the employees it is sanctioning have done anything wrong, unless it first affords them a hearing.

Indeed, it "has long been recognized that 'fairness can rarely be obtained by secret, one-sided determinations of facts decisive of rights....'" *Fuentes v. Shevin*, 407 U.S. 67, 81, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972), quoting *Joint Anti-Fascist Refugee Committee v. McGrath, supra,* 341 U.S. at 170, 71 S.Ct. at 647.

*Allegheny Ludlum Steel Corporation v. Pennsylvania Public Utility Commission,* 501 Pa. 71, 80, 459 A.2d 1218, 1222 (1983) (Larsen, J., dissenting). *See also Sterling v. Commonwealth Department of Environmental Resources,* 504 Pa. 7, 17, 470 A.2d 101, 106 (1983) (Larsen,

J., opinion in support of reversal) ("there is no way anyone can determine whether instituting disciplinary measures against appellant will promote greater efficiency and economy at DER until it has been proven that appellant has actually engaged in conduct detrimental to the agency. Administrative and judicial inquiry into the allegations against appellant would not be nearly as disruptive as would unfounded allegations of misconduct and disciplinary sanctions leveled at undeserving employes ....").

Finally, the majority views appellants' ability to place counter-statements in their files as "genuine recourse to protect [their] reputation[s]." At 260. I cannot agree. Such counter-statements would only invite each superior who subsequently looks into the employee's personnel file to judge for himself just where the truth lies. I think that appellants should be afforded the certainty of a single judgment, rendered by an impartial arbiter after a hearing, rather than having to be judged anew each time their employment status is considered.

I would reverse the order of the Commonwealth Court and remand this case to the court of common pleas for further proceedings under the Local Agency Law.