**NHS HUMAN SERVICES OF PA, Petitioner**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Oct. 23, 2009.

Decided Dec. 8, 2009.

---

Patrick G. Murphy, Blue Bell, for petitioner.

Howard Ulan, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, and FRIEDMAN, Senior Judge, and QUIGLEY, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

NHS Human Services of PA (NHS) petitions for review of the February 3, 2009, order of the Department of Public Welfare (Department), Bureau of Hearings and Appeals (BHA), adopting the decision of an administrative law judge (ALJ) and dismissing NHS' appeal from a July 11, 2008, email from the Department's Office of Children, Youth and Families (OCYF) on the ground that the email did not constitute a final agency action. We affirm.

The Department and OCYF supervise and provide funding to county children and youth agencies, which offer services directly or through contracts with private agencies. NHS is a private agency that provides out-of-home residential services to court-adjudicated delinquent and dependent children pursuant to such contracts. On March 6, 2008, OCYF issued Bulletin # 3170–08–01, which became effective July

1, 2008, and requires county agencies to include detailed expenditure documentation in all residential service contracts. On July 11, 2008, the director of OCYF's Bureau of Program Support sent an email message to NHS concerning contract documentation that NHS had submitted to OCYF. The text of the email is as follows:

I wanted to make you aware that NHS's Contract Documentation related to [OCYF] Bulletin 3170–08–01 are [sic] incomplete and unacceptable with the information that your organization has submitted to the State and to the counties. Neither the State nor the Federal Government will participate in the reimbursement of NHS indirect costs unless will [sic] receive a breakdown of said costs including the indirect staff roster and allocation plan. A single line item for indirect cost[s] is not sufficient documentation to insure compliance with State and Federal regulations.

Please rectify these issues and resubmit immediately. If you have any questions, please call or email my office. My staff can be emailed at [ ].

(R.R. at 2.) The message also provided a telephone number.

On July 21, 2008, NHS filed an appeal with the Department Secretary pursuant to 1 Pa.Code § 35.20,[1] arguing that the email from OCYF constituted a decision that was arbitrary, capricious and unlawful. NHS complained that the email failed to explain why the contract documentation "dutifully submitted by NHS in accordance with OCYF Bulletin # 3170–08–01" was incomplete and failed to cite state and federal regulations to support its decision. (R.R. at 1.) Further, NHS asserted that OCYF Bulletin # 3170–08–01 constitutes an unpublished regulation and contains terms that are unreasonable and beyond the scope of OCYF's statutory authority. NHS requested the Department to rescind the bulletin or, alternatively, determine that the information submitted by NHS is legally sufficient. On July 31, 2008, the Department filed a motion to dismiss the appeal.

In a decision dated January 26, 2009, the ALJ observed that the email message warned NHS that it would not be reimbursed unless it resubmitted documentation with a breakdown of indirect costs. The ALJ determined that the request to NHS to resubmit the documentation unambiguously indicated that the Department had not taken final action affecting NHS' rights and obligations. Relying on *Guthrie v. Borough of Wilkinsburg,* 505 Pa. 249, 478 A.2d 1279 (1984), *Benson Lincoln Mercury, Inc. v. Department of Transportation,* 145 Pa.Cmwlth. 159, 602 A.2d 496 (1992), and *Fiore v. Department of Environmental Resources,* 98 Pa. Cmwlth. 35, 510 A.2d 880 (1986), the ALJ concluded that the email message was merely a warning, rather than a final agency action from which an appeal can be taken. Accordingly, the ALJ issued a recommendation that the appeal be dismissed. (R.R. at 4–6.) By order dated February 3, 2009, the BHA adopted the decision of the ALJ in its entirety and dismissed NHS' appeal.

▬ Before this court, NHS first argues that the Department erred in determining that the email from OCYF did not constitute an adjudication appealable under the Administrative Agency Law (Law), 2 Pa.C.S. §§ 501–508, 701–704.[2] We disagree.

An adjudication is defined as

---

1. 1 Pa.Code § 35.20 provides that authorized actions taken by a subordinate officer may be appealed to the agency head by filing a petition within ten days of receiving notice of the action.

2. Our scope of review is limited to determining whether constitutional rights were violat-

Any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made.

2 Pa.C.S. § 101. A letter can constitute an adjudication, requiring notice and a hearing, if a two-prong test is met: 1) the letter must be an agency's final order, decree, decision, determination or ruling; and 2) it must impact on a party's personal or property rights, privileges, immunities, duties, liabilities or obligations. *Guthrie.* We conclude that the same test applies to an agency's correspondence by email.

▮ Utilizing that test, we agree that the email at issue is properly characterized as a warning, rather than an adjudication. On its face, the July 11th email, dated ten days after the effective date of the new bulletin, expresses an intent to ensure that NHS is aware that its submissions are incomplete and of the potential consequences for failure to remedy the insufficiency. The email contains no language indicating finality, but, to the contrary, invites NHS to resubmit its documentation and to contact OCYF with any questions. Thus, the email is fairly characterized as a recommendation that NHS supplement its documentation in order to comply with state and federal regulations.

NHS argues that there is nothing remotely tentative or advisory about the email. Instead, NHS asserts that the email constitutes an application of a new mandate and, consequently, an adverse determination rejecting NHS' documentation. According to NHS, OCYF determined that payment for certain costs incurred by NHS would not be paid by county children and youth agencies "unless and until" the data was submitted and approved by OCYF pursuant to the Bulletin. (NHS' brief at 12.) It thus appears that, in making this argument, NHS implicitly acknowledges that the requisite element of finality is missing here.

Relying on *Dijas Capital, LLC v. Department of Community and Economic Development,* 972 A.2d 120 (Pa.Cmwlth. 2009), and *In Re Petition for Formation,* 962 A.2d 24 (Pa.Cmwlth.2008), NHS argues that the email constitutes an adverse determination affecting NHS' property rights. However, these decisions are readily distinguishable because in each of those cases there was no question that the agency had communicated a final determination.[3]

The present case is analogous to *Fiore,* in which we held that a notice of violation issued by the Department of Environmental Resources (DER) was not an action that could be appealed. In that case, after inspections of a waste disposal facility revealed continuing violations of the Pennsylvania Solid Waste Management Act,[4] DER issued Fiore a "Notice of Violation" detailing the results of the inspection and the specific regulations being violated. The notice stated on its face that it was

---

ed, whether the adjudication is in accordance with the law and whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

3. In *Dijas,* the court based its holding on the conclusion that an award of enterprise zone tax credits by the Department of Community and Economic Development was a "privi-

lege" as contemplated by the statutory definition of "adjudication" at 2 Pa.C.S. § 101. Similarly, in *In Re Petition for Formation,* "there [was] no question that the [Secretary of Education's] disapproval ... was a final determination by an agency...." *Id.* at 27.

4. Act of July 7, 1980, P.L. 380, *as amended,* 35 P.S. §§ 6018.101–6018.1003.

not to be construed as a final agency action, and no subsequent action was taken by DER in response to the violations identified in the notices. Nevertheless, Fiore argued that the notice was a final determination affecting his rights because, as a practical matter, DER uses such notices to compile a compliance history, which, in turn, is used by DER as grounds for mandatory denials of applications for licenses and permits.

We rejected Fiore's argument for two reasons. First, we explained that, even if Fiore were correct that the notice of violation would inevitably lead to the denial of a permit, such denial would be the correct point at which to appeal and to demonstrate that the violations had been erroneously found. "The ultimate denial, not the notice of violation, is the 'action or adjudication' which in fact would affect Fiore's rights." *Fiore*, 510 A.2d at 883. We further noted that there was no basis to find that such a denial *was* inevitable; instead, it was evident to the court that Fiore had an opportunity to prove that the unlawful conduct had been corrected.

Similarly, NHS has an opportunity to submit the documentation necessary to avoid an adverse decision by the agency. Unless and until the Department issues a final determination resulting in a denial of payment to NHS, NHS does not have an adjudication from which it can take an appeal.[5] *Fiore.*

Accordingly, we affirm.

Judge BUTLER, did not participate in the decision in this case.

### ORDER

AND NOW, this 8th day of December, 2009, the order of the Department of Public Welfare, Bureau of Hearings and Appeals, dated February 3, 2009, is hereby affirmed.

---

**5.** Having so decided, we need not address the remaining issues raised by NHS on appeal.