# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cynthia DeLuca and DeLuca's Auto : 
Repair and Towing, Inc. : 
                   Appellants : 
                                  : No. 2401 C.D. 2015
              v. : Argued: June 6, 2016
                                  : 
Hazleton Police Department and : 
Chief of Police Frank V. DeAndrea, Jr. : 


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION**
**BY JUDGE SIMPSON**                **FILED: July 28, 2016**

The key issue in this case is whether suspension from a municipality's emergency service towing rotation is an "adjudication" under our Local Agency Law,[1] requiring a hearing and the right of appeal. A towing business was suspended from the towing rotation in Hazleton amid accusations of misconduct, including dishonesty or corruption affecting the health, safety and welfare of others, but it was denied a hearing before the local agency and a trial court. The towing business appeals.

More particularly, DeLuca's Auto Repair and Towing, Inc., and its owner, Cynthia DeLuca (collectively, DeLuca) appeal from an order of the Court of Common Pleas of Luzerne County (trial court) dismissing their local agency appeal. DeLuca appealed from a letter of the Hazleton Police Department

---

[1] 2 Pa. C.S. §§551-555, 751-754.

(Department) and Chief of Police Frank V. DeAndrea, Jr. (Police Chief) suspending DeLuca from being placed on the Department's emergency service towing rotation list for a period of three years. In granting the Department's motion to dismiss, the trial court determined DeLuca demonstrated no constitutionally protected rights or interests in the Department's towing rotation warranting a right to appeal the Department's suspension letter. For the reasons that follow, we reverse and remand for further proceedings.

## I. Background

DeLuca is a Pennsylvania corporation located in the City of Hazleton. It is in the business of towing vehicles. Prior to June 9, 2015, DeLuca received towing assignments on a rotating basis with other approved towers. On June 9, 2015, the Department faxed DeLuca a notification of suspension of towing services for three years under Section 1.06 of the Department's Towing Requirements Policy (Towing Policy) for repeated conduct by a towing service employee that tends to demean the public image of the Department. See Reproduced Record (R.R.) at 7a. The Department described Ms. DeLuca's offending conduct as follows:

> Facebook posting under your personal account have [sic] accused the Mayor of the City of Hazleton with being [a] criminal and accepting bribes. This by means of the relationship [DeLuca] has with the City of Hazleton and the [Department], tends to demean the public image of the Department.

Id. The Department's notice of suspension also provided:

> Your suspension shall be for three years. It shall commence immediately and shall end June 10, 2018.

2

> Prior to your towing service becoming eligible to receive service calls at the end of this suspension you must take appropriate remedial action. Your towing services recourse to this suspension is through civil litigation.

Id. (emphasis added). Thereafter, news articles about DeLuca's suspension appeared on-line and in the local newspaper. See R.R. at 31a-36a.

In response to the notice of suspension, DeLuca, through counsel, requested either a rescission of the suspension or a hearing on the suspension in the nature of an appeal. R.R. at 8a-9a. On June 17, 2015, the Department issued a revised notice of suspension, which provided (with emphasis added):

> The suspension is pursuant to Section 1.06(C)(3) of the [Towing Policy]: 'The commission of any act by an owner or manager of a towing service involving dishonesty or corruption, when the act directly or indirectly affects the health, welfare, or safety of others.' The Facebook posting under 'Hazleton Corrupts' created under your name and Facebook account has accused the [Department], the Mayor, Frank Vito and [Police Chief] of being corrupt, accepting bribes, and improperly discriminating against your towing company (which is untrue). I enclose a copy of the policy for your convenience. I note that you were given a copy of same when you were originally placed on the list, which you consented to.
>
> Your suspension shall be for three years. It shall become effective June 9, 2015, and it shall end on June 10, 2018. Prior to your towing service becoming eligible to receive service calls at the end of this suspension you must take appropriate legal action. Your towing services recourse to this suspension is through civil litigation, per Section 1.06(F) of the Policy.
>
> I am copying your Attorney … with this Notice. The Hazleton City Solicitor … advises [your attorney]

3

> that no appeal hearing will be provided in this matter, his recourse is via suit, per Section 1.06(F) of the policy. Additionally, any suit claiming constitutional protection of free speech and association for this activity will be met with a counterclaim for defamation and attorneys' fees.

R.R. at 10a.

In July 2015, DeLuca filed a local agency appeal from the Department's first notice of suspension asserting the suspension of DeLuca's towing privileges constituted an adjudication imposed without a hearing in violation of DeLuca's due process rights. See R.R. at 4a-6a. In its appeal, DeLuca averred:

> 5. The purported suspension was without prior notice or hearing and is without basis in fact.
>
> 6. The purported suspension is in violation of both the United States and Pennsylvania Constitutions in that it was done without due process and in contravention of [DeLuca's] rights of political speech, activity and affiliation.
>
> 7. [DeLuca's] constitutional property and liberty interests have been impaired by the purported suspension.

DeLuca's Appeal at ¶¶5-7; R.R. at 5a.

In August 2015, the Department responded with a motion to dismiss the appeal. R.R. at 16a-23a. The Department argued that a local agency appeal is permitted only where an agency issues an adjudication adversely affecting the personal or property rights or interests of an individual or business. Here, the Department asserted, DeLuca had no statutory or contractual entitlement to remain

4

in the towing service rotation. Therefore, the Department argued, DeLuca had no personal or property rights at stake and thus had no right to an appeal.

Thereafter, the trial court held oral argument on the Department's motion. R.R. at 26a-29a. Before the trial court, DeLuca asserted it suffered both a business loss and a reputational loss. The suspension cost DeLuca two rotations in just six weeks, and the business it would have received. See Notes of Testimony (N.T.), 8/17/15, at 3-4; R.R. at 27a. DeLuca further asserted it lost additional business from other customers who thought DeLuca went out of business or could no longer work in Hazleton. Id. Therefore, in addition to a financial loss, DeLuca claimed it suffered a reputational loss as a result of the suspension. Id.

In response, the Department asserted DeLuca had neither a contract with the Department nor a statutory right to be on the Department's towing rotation list. N.T. at 6-7; R.R. at 28a. To that end, the Department argued its Towing Policy did not create a contractual relationship between the Department and DeLuca. N.T. at 8; R.R. at 28a. Absent a right to a local agency appeal, the Department asserted DeLuca's claim for loss of reputation or stigma must be brought in a proper forum, such as a state or federal court. Id.

Following oral argument, the trial court also set up a briefing schedule for the parties and concluded the hearing. On October 1, 2015, the trial court entered an order granting the motion to dismiss the appeal.

Thereafter, in an opinion in support of its order, the trial court, citing our decision in Wilco Mechanical Services, Inc. v. Department of General Services, 33 A.3d 654 (Pa. Cmwlth. 2011), recognized a letter may constitute an adjudication if it is a final determination of an agency impacting a party's personal or property rights, privileges, immunities, duties or obligations. See Tr. Ct., Slip Op., 12/30/15, at 7. Further, the court reasoned, to have a constitutionally protected property interest, a party must have more than a unilateral expectation, it must possess a legitimate and enforceable claim under the law. Id. at 7-8. In addition, an agency's general statement of policy is neither a rulemaking nor an adjudication. Id. at 9. Reviewing additional cases cited by the Department, the trial court reasoned:

> We have reviewed the authority submitted by the [Department] defining and delimiting the nature of the purported rights and interests asserted in the instant context. These include: [In re J.B., 107 A.3d 1 (Pa. 2014)]; [Pipkin v. Pennsylvania State Police, 693 A.2d 190 (Pa. 1997)]; [Stumpp v. Stroudsburg Municipal Authority, 658 A.2d 333 (Pa. Cmwlth. 1995)]; Wilco; [Scott v. City of Pittsburgh, 903 A.2d 110 (Pa. Cmwlth. 2006)]; [Nitterhouse v. Department of Public Services, 706 A.2d 381 (Pa. Cmwlth. 2006)]; and [Nearhood v. City of Altoona, 705 A.2d 1363 (Pa. Cmwlth. 1998)].

> Both the holdings and tenor of the referenced decisions require, in our judgment, an interpretation of an asserted right or interest which is consistent with the language employed by the legislature. Indeed, these decisions do not seek to judicially expand or create interests or privileges not contemplated by the legislation.

Tr. Ct., Slip. Op., at 8 (citation omitted).

6

Ultimately, the trial court determined, "[i]t is not the court's prerogative to interfere with the operation of municipal government or the decisions made by municipal officials <u>absent</u> some legally cognizable and necessary reason to do so." Tr. Ct., Slip. Op., at 10 (emphasis in original).

With respect to DeLuca's claim of injury to its reputation, the trial court rejected DeLuca's argument that the Supreme Court's decision in <u>J.B.</u> dictates that an injury to a party's reputational interest permits an agency appeal and hearing. In <u>J.B.</u>, the Supreme Court reviewed a trial court's determination that lifetime registration provision in the state's Sex Offender Registration and Notification Act (SORNA), 42 Pa. C.S. §§9799.10-9799.41, as applied to juveniles, violated their due process rights. In <u>J.B.</u>, the Supreme Court recognized the juveniles had an interest in their reputation protected by Article I, Section 1 of the Pennsylvania Constitution, which provides (with emphasis added):

> All men are born equally free and independent and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, <u>of acquiring, possessing and protecting property and reputation</u>, and of pursuing their own happiness.

PA CONST. art. 1, §1. In addition, Article I, Section 11 of the Pennsylvania Constitution provides (with emphasis added):

> <u>All courts shall be open; and every man for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law</u>, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

7

PA CONST. art. 1, §11.

Ultimately, the Supreme Court determined the irrebuttable presumption of recidivism in 42 Pa. C.S. §9799.11(a)(4), which states sexual offenders "pose a high risk of committing additional sexual offenses," violated the juveniles' procedural due process right to protect their reputation by denying them an opportunity to be heard on the issue of the likelihood that they will commit additional sexual offenses. In particular, the Court observed, the studies credited by the trial court indicated that unlike adult sexual offenders, juvenile sexual offenders exhibit low levels of recidivism. In short, "the vast majority of juvenile offenders are unlikely to recidivate." J.B., 107 A.3d at 18. Consequently, the Supreme Court upheld the trial court's determination that SORNA's lifetime registration requirement, based on an irrebuttable presumption of recidivism, was unconstitutional as applied to juvenile offenders. J.B.

In the present case, however, the trial court reasoned the Supreme Court's decision in J.B. did not create a right of appeal under the Local Agency Law, 2 Pa. C.S. §§551-555, 751-754, for the deprivation of a party's right to reputation without due process. To that end, the trial court stated:

> We fail to discern how the reputational interest recognized in J.B. requires a hearing presently. The correspondence which removes DeLuca from the towing rotation specifically advises her that recourse is through civil litigation. No one suggests, and we have certainly not determined, that DeLuca does not possess a reputational interest or that the reputational interest was not adversely affected. Today's decision does not deprive DeLuca from pursuing any appropriate cause of action against [Police Chief] or the [Department.]

8

Our conclusion, informed by the referenced appellate decisions, is simply that Local Agency Law does not provide the forum or context within which to address the alleged wrong.

The Pennsylvania legislature could certainly expand the scope of these provisions to include the type of interest presently asserted. This, in our judgment, is certainly a legislative prerogative not a judicial one. It involves a policy determination with which a court should not meddle or interfere. In the context considered, it is our view that the judiciary should not thrust itself into each and every decision made by a validly constituted municipal government. The perils of doing so, aside from failing to recognize its place in our constitutional scheme, should be obvious. It is not the court's prerogative to interfere with the operation of municipal government or the decisions made by municipal officials *absent* some legally cognizable and necessary reason to do so.

Tr. Ct., Slip Op., at 9-10 (emphasis in original). DeLuca appeals.[2]

## II. Issues

DeLuca presents three issues for our review. DeLuca first contends the trial court erred in failing to find the Department's June 9, 2015 suspension letter constituted an adjudication under the Local Agency Law. DeLuca further asserts the trial court erred in failing to find that DeLuca was entitled to a *de novo* hearing on its appeal from the Department's suspension letter. In addition, DeLuca argues, in light of J.B., the trial court erred in failing to find that DeLuca's right to

---

[2] Our review of the trial court's order dismissing DeLuca's appeal is limited to determining whether the trial court erred as a matter of law or abused its discretion. Bray v. McKeesport Hous. Auth., 114 A.3d 442 (Pa. Cmwlth. 2015).

its reputation is a personal right protected by the Pennsylvania Constitution and a right which cannot be impaired by a local agency adjudication without due process.

## III. Discussion
### A. Local Agency Law
### 1. Argument

DeLuca first contends the trial court's determination that a contractual or statutory entitlement is a prerequisite to the right to a hearing under the Local Agency Law is contrary to applicable statutory law and case law. To the contrary, DeLuca asserts, the Department's suspension of its towing privileges satisfies the following definition of "adjudication" in 2 Pa. C.S. §101 (with emphasis added):

> Any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made. The term does not include any order based upon a proceeding before a court or which involves the seizure or forfeiture of property, paroles, pardons or releases from mental institutions.

Further, "[n]o adjudication of a local agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard." 2 Pa. C.S. §553. "In the event a full and complete record of the proceedings before the local agency was not made, the court may hear the appeal de novo, or may remand the proceedings to the agency for the purpose of making a full and complete record …." 2 Pa. C.S. §754(a).

DeLuca asserts it is beyond dispute that the Department's suspension of its towing privileges constituted a final order. Therefore, DeLuca argues, the primary issue is whether the Department's suspension adversely affected its property rights, privileges, immunities or obligations. Citing <u>Guthrie v. Borough of Wilkinsburg</u>, 478 A.2d 1279 (Pa. 1984), DeLuca argues the Department's suspension constituted a concrete alteration of its legal status. DeLuca also asserts the sole purpose of the Department's suspension was to punish it for the Facebook posting.

If so, DeLuca posits, it is entitled to a remand for an agency hearing or a *de novo* hearing before the trial court. 2 Pa. C.S. §754(a). On remand, either the agency or the trial court must make a full and complete record of the proceeding. <u>Id.</u>

DeLuca maintains the Department's notices of suspension, which received wide publicity in the Hazleton area, plainly and clearly stated DeLuca engaged in "dishonesty or corruption [which] directly or indirectly affects the health, welfare or safety of others." <u>See</u> R.R. at 10a. The Department based the suspension on a finding that DeLuca violated Section 1.06(C) of the Towing Policy, relating to "Suspension of Towing Service(s)", which provides (with emphasis added):

> C. The following are considered to be valid reasons for the suspension of a towing service and the amount of time for the suspension:
>
> 1. Three instances of inability to respond or failure to respond in an appropriate time period due to

11

circumstances within their control during any six-month period. (1 year suspension)

2. Failure to maintain the standards for towing services set forth in this regulation. (First Offense 1 year suspension; Second and subsequent offenses 3 year suspension)

3. The commission of an act by an owner or manager of a towing service involving dishonesty or corruption, when the act directly or indirectly affects the health, welfare or safety of others. If the act constitutes a crime, conviction thereof in a criminal proceeding is not a necessary condition precedent to the suspension. (3 year suspension up to and including lifetime revocation of privileges)

4. Furnishing false information on the Application to Provide Emergency Towing Services (Appendage A) (lifetime revocation of privileges)

5. Overcharging for services rendered, as determined in conjunction with the Fee Schedule filed with the Application to Provide Emergency Towing Services or the institution of fees not listed on the Fee Schedule. (3 year suspension up to and including lifetime revocation of privileges)

6. Repeated conduct by any employee of the towing service of a nature which, by means of the relationship the service has with the Department, tends to demean the public image of the Department. (3 year suspension up to and including lifetime revocation of privileges)

Towing Policy at 1.06(C)1-6; R.R. at 14a-15a.

The Department's first notice of suspension identifies Section 1.06(C)(6) of the Towing Policy (repeated conduct tending to demean the public

12

image of the Department by means of a Facebook posting accusing the mayor of accepting bribes) as the reason for the suspension. See R.R. at 7a.

The Department's revised notice of suspension identifies Section 1.06(C)(3) of the Towing Policy (acts by owner or manager involving dishonesty or corruption affecting the health, welfare or safety of others) as the reason for the suspension. See R.R. at 10a.

DeLuca contends the Department's suspension notices resulted in a business loss because of DeLuca's absence from the rotation and the belief by others that it was no longer in business or that it could no longer operate in Hazleton. As such, DeLuca asserts the Department's suspension constituted an appealable adjudication because it adversely affected DeLuca's personal or property rights, interests or privileges.

In addition to the business loss resulting from removal from the towing rotation, DeLuca asserts the false accusations in the Department's suspension notices damaged its reputation as a Hazleton towing company. In its brief submitted to the trial court, DeLuca attached a June 10, 2015 newspaper article from the *Hazleton Standard-Speaker* quoting Cynthia DeLuca's statement that someone hacked her Facebook account and created the posting at issue. See R.R. at 31a. In the article, Ms. DeLuca claimed she reported the incident to Facebook. Id.

DeLuca argues its reputation is a personal right protected by the Pennsylvania Constitution. J.B. Therefore, it cannot be impaired by a government agency adjudication without procedural due process. Id. DeLuca contends the cases cited by the Department and relied upon by the trial court to support its determination, that the Department's suspension of DeLuca's towing privileges did not implicate a constitutionally protected personal or property interest, predated the Supreme Court's 2014 decision in J.B.

## 2. Analysis
### a. Generally

"Whether a hearing and notice is required under the Local Agency Law depends on whether a local agency's actions constitute an adjudication." Guthrie, 478 A.2d at 1281. For a letter to qualify as an adjudication under 2 Pa. C.S. §101, a two-pronged test must be met: (1) the letter must be an agency's final order, decree, decision or ruling; and, (2) it must impact on a person's personal or property rights, privileges, immunities, duties, liabilities or obligations. Guthrie. To be entitled to procedural due process protection for injury to a personal or property interest, the injury flowing from the agency action must be concrete, not abstract. Id. Neither due process nor the Local Agency Law can be viewed as protecting remote, future, indirect or speculative rights. Id. For example, in an employment situation, a written warning, as opposed to a discharge, demotion or suspension, would *not* constitute an adjudication. Id.

In addition, apart from a property interest, in some instances government action seriously criticizing an individual may implicate a liberty

14

interest triggering due process protection. <u>Guthrie</u>. However, to justify the invocation of the Local Agency Law's due process safeguards, the government criticism must be combined with a concrete alteration of the person's legal status. <u>Id.</u> (citing <u>Paul v. Davis</u>, 424 U.S. 693 (1976)).

For these reasons, DeLuca requests a remand either for a local agency appeal before the Department or a *de novo* hearing before the trial court on the Department's notice of suspension.

In the present case, the Towing Policy includes the following provisions (with emphasis added):

> 1.01 PURPOSE
>
> The purpose of this <u>regulation</u> is to establish policy and procedures governing the provision of assistance to individuals on the roadway, and the criteria for and selection of towing services when for any legal reason the [Department] needs to remove a vehicle from its location to a location of safety or safekeeping ….
>
> 1.02 POLICY
>
> It is the policy of [the Department] to provide necessary assistance to individuals in need in a timely, efficient and safe manner. It is also the policy of [the Department] not to recommend a towing service.… <u>It shall be the policy of [the Department] to first use businesses that are located within the limits of the City of Hazleton. Only in emergency, or unforeseen/extenuating circumstances will [the Department] contract for or solicit service from an Emergency Towing Service whose established place of business is outside of the geographic limits of the City.</u>

\* \* \* \*

15

## 1.04 PROCEDURES

A. <u>The Chief of Police shall review the applications of any Towing Service that desires to handle emergency towing calls for the City of Hazleton</u>.

B. The Chief of Police shall provide the names of all qualified Towing Services to Luzerne County 911 to be placed on the Hazleton Emergency Towing Service Rotation and contacted in turn when the need arises for emergency towing.  The [T]owing Service Rotation shall address the distribution of service calls within [the Department's] geographic area of responsibility.

* * * *

## 1.05 APPLICATION PROCEDURE FOR TOWING SERVICE

A. <u>Towing services interested in receiving service calls from [the Department] must make application to [the Department]</u>.  The application, and Fee Schedule, can be found in Appendage A.

B. Towing services must have an established place of business, a secure storage facility and a secure storage lot, as defined in this regulation.

C. Towing services shall indicate on the application all services it intends to provide:  Heavy Duty, Medium Duty, Light Duty, or Recovery Service.  The service shall be equipped for the service it intends to provide, as described in this regulation.

D. Towing services shall advise [the Department] of its [sic] fees in accordance with the Fee Schedule, Appendage A.  Prior to fees being changed, the towing service shall submit a new fee schedule to [the Department].

## 1.06 SUSPENSION OF TOWING SERVICE(S)

16

A. The Chief of Police shall be authorized to suspend a towing service from contact by [the Department]. Any such suspension shall follow the schedule set forth below.

B. Notice of the suspension shall be sent to the established place of business of the towing service and to all members of [the Department] and the appropriate dispatch personnel likely to be affected.

* * * *

D. A towing service that has been suspended must take appropriate remedial action before it will become eligible to receive service calls at the end of its suspension.

* * * *

F. Towing services recourse to suspension is through civil litigation.

Towing Policy at 1.01-1.06; R.R. at 11a-15a.

As discussed above, the Police Chief, on behalf of the Department, first suspended DeLuca for a three-year period for a violation of Section 1.06(C)(6) of the Towing Policy for conduct by an employee tending to demean the public image of the Department. R.R. at 7a. The notice alleged a Facebook posting accusing the Mayor of "being criminal and accepting bribes." Id.

In response, DeLuca attempted to appeal or rescind the suspension. R.R. at 8a-9a. DeLuca asserted the suspension violated its constitutional rights to due process, free speech and association. Id. DeLuca further asserted it sustained serious harm. Id.

17

Thereafter, Police Chief issued a *revised* notice suspending DeLuca for a three-year period for a violation of Section 1.06(C)(3) of the Towing Policy for the commission of an act by an owner or manager of a towing service involving dishonesty or corruption and directly or indirectly affecting the health, welfare or safety of others. R.R. at 10a. The notice described the offensive conduct as a Facebook posting accusing the Department, Police Chief and others as being corrupt, accepting bribes and engaging in discrimination against DeLuca. Id.

In determining whether the Department's notice of suspension constituted an adjudication under 2 Pa. C.S. §101, we must first determine whether the notice constituted a final order. Guthrie. Here, as indicated by the plain language of the notices, the Department and Police Chief intended the notice to announce their final decision to suspend DeLuca's towing privileges for three years beginning June 9, 2015, based on DeLuca's allegedly demeaning Facebook posting regarding the Mayor, Department and Police Chief. Id. Thus, the Department's notice of suspension is a final order. Id.

The crucial inquiry, however, is whether the Department's suspension affected DeLuca's personal or property rights or privileges, immunities, duties, liabilities or obligations. 2 Pa. C.S. §101; Guthrie. In order to have a constitutionally protected property interest, a party must have a legitimate and enforceable claim under the law. Wilco. Such a claim may be guaranteed by statute or contract. Guthrie. It may also be quasi-contractual in nature. Id.

18

In Caba v. Weaknecht, 64 A.3d 39 (Pa. Cmwlth. 2013), we recognized that property interests entitled to due process protection may take many forms. Citing Board of Regents of State Colleges v. Roth, 408 U.S. 564 (1972), we recognized that the U.S. Supreme Court fully rejected the "wooden distinction between 'rights' and 'privileges' that once seemed to govern the applicability of procedural due process rights." Caba, 64 A.3d at 56, n.12 (quoting Roth, 408 U.S. at 571)).

### b. "Stigma-Plus"

Roth, the United States Supreme Court case we cited in Caba, involved an asserted "liberty" interest. The rationale is instructive here. In Roth, a state university hired David Roth as a political science professor for a period of one year. At the end of the year, the university informed Roth that he would not be rehired. The university offered no reason for its decision and provided no right of appeal. Thereafter, Roth brought an action in federal court asserting the university's decision, which failed to provide any reasons for not rehiring him, deprived him of a liberty interest without due process of law. Ultimately, the Supreme Court determined the university did not deprive Roth of a protected liberty interest under the particular circumstances of the case. Nonetheless, the Supreme Court reasoned (with emphasis added):

> There might be cases in which a State refused to re-employ a person under such circumstances that interests in liberty would be implicated. But this is not such a case.
>
> The State, in declining to rehire [Roth], did not make any charge against him that might seriously damage his standing and associations in his community.

19

> It did not base the nonrenewal of his contract on a charge, for example, that he has been guilty of dishonesty, or immorality. Had it done so, this would be a different case. For '[w]here a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.' … In such a case, due process would accord an opportunity to refute the charge before University officials. In the present case, however, there is no suggestion whatever that [Roth's] 'good name, reputation, honor or integrity' is at stake.
>
> Similarly, there is no suggestion that the State, in declining to re-employ [Roth], imposed upon him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities. The State, for example, did not invoke any regulations to bar [Roth] from all other public employment in state universities. Had it done so, this, again, would be a different case. For '[t]o be deprived not only of present government employment but of future opportunity for it certainly is no small injury ….'"

Roth, 408 U.S. at 573-74 (citations omitted).

The quoted language in Roth can be applied to the present case. As in Roth, DeLuca did not have a contractual or statutory right to remain on the towing rotation list. However, DeLuca's suspension was imposed upon it with a stigma that allegedly affected its ability to take advantage of other employment possibilities. In particular, DeLuca argued before the trial court and in its briefs here that its business suffered a financial loss from lost business due to removal from the rotations, and an additional loss of business from potential customers who thought DeLuca went out of business or could no longer provide towing service in Hazleton. See N.T. at 3-4; R.R. at 27a. If anything, the stigma attached to DeLuca here is more significant under Pennsylvania law than federal law in Roth, because

20

Pennsylvania's state constitution specifically recognizes a protected interest in reputation.

In Guthrie, a 1984 Pennsylvania Supreme Court decision citing Roth and other cases, the Court recognized that government action seriously criticizing a person could implicate a liberty interest and trigger due process rights where the government combined allegations of misconduct or criminal activity with a concrete alteration of the person's legal status, such as a suspension of employment. Guthrie, 478 A.2d at 1283.

In the present case, DeLuca meets the criteria described in Guthrie. To participate in the Department's towing service rotation, a towing service must be located in Hazleton, apply for approval, and demonstrate certain qualifications. Once approved, a participant may be suspended for: (1) three instances of inability to respond within an appropriate time, due to circumstances within its control, in a six-month period (§1.06(C)(1)); (2) failing to maintain the Towing Policy's service standards (§1.06(C)(2)); or (3) for one of the types of misconduct listed in §§1.06(C)(3)-(6). Thus, DeLuca, a Hazleton towing service, had an ongoing towing relationship with the Department, and interruption of that relationship was constrained by the Towing Policy.

In Caba this Court determined that it is not the existence of discretion that precludes recognition of a property interest, but whether that discretion is unfettered and thus unassailable. By its Towing Policy, the Department limited its discretion to suspend an approved Hazleton towing service from the towing

21

rotation. This limitation of discretion to suspend is the interest which DeLuca seeks to enforce. Stated differently, DeLuca had a legitimate expectation, as an approved Hazleton towing service, that its towing rotation privileges would not be arbitrarily suspended under Section 1.06(C) of the Towing Policy based on unproven allegations of misconduct. See Roth (to have a property interest in a benefit or privilege that is protected by procedural due process, one must have a legitimate claim of entitlement to it); Caba (same).

Moreover, there can be no question that the Department's suspension of DeLuca was a concrete alteration of DeLuca's ongoing relationship with the Department. Guthrie.

Further, there is no doubt that the Department's suspension of DeLuca involved allegations of misconduct or criminal activity. In the initial suspension notice, the offending conduct was described as tending to demean the public image of the Department. R.R. at 7a. The revised suspension notice referenced "[t]he commission of any act … of a towing service involving dishonesty or corruption when the act directly or indirectly affects the health, welfare or safety of others." R.R. at 10a.

In sum, by applying the Pennsylvania Supreme Court's language in Guthrie, and the U.S. Supreme Court's language in Roth, we conclude that a "stigma-plus" situation has been averred which, if proved, would qualify as a type of privilege referenced in the definition of "adjudication" in the Local Agency

22

Law. 2 Pa. C.S. §101. Under the terms of the Local Agency Law, DeLuca is entitled to a hearing and to an appeal. 2 Pa. C.S. §§553, 554, 752-754.

### c. Protected Interest in Conformance with Policy

Our conclusion is supported by our recent decision in <u>Bray v. McKeesport Housing Authority</u>, 114 A.3d 442 (Pa. Cmwlth. 2015). In <u>Bray</u> we determined that a housing authority decision not to accept an application for public housing is an "adjudication" subject to appeal under the Local Agency Law. We held that even if an applicant does not have a property interest in the housing itself, an applicant has a right to have her eligibility determined in accordance with the law.

Similarly, here DeLuca has an interest in the Department's written Towing Policy limiting the reasons for suspension of a Hazleton towing service from the towing rotation. Indeed, because DeLuca already has an established, ongoing relationship with the Department by virtue of its approved application to be added to the towing rotation list, DeLuca has an arguably stronger case that the unapproved applicant for housing in <u>Bray</u>.

### d. Remedy

As can be seen from the portions of the Towing Policy quoted above, the Policy provides for neither a hearing nor an appeal. The only "recourse to suspension is through civil litigation." Section 1.06(F) of the Towing Policy, R.R. at 15a.

23

However, Article V, Section 9 of the Pennsylvania Constitution provides (with emphasis added):

> There shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court, the selection of such court to be as provided by law; and there shall be such other rights of appeal as may be provided by law.

Although this provision is not self-executing, the Local Agency Law was enacted to implement the appeal rights from local agencies set forth in the State Constitution. Bray.

We are mindful that the right of appeal sought to be implemented by the Local Agency Law is of a constitutional dimension. Having determined that the Department's two notices of suspension from the towing rotation are "adjudications" of a local agency pursuant to the Local Agency Law, DeLuca is entitled to a hearing on the record and to an appeal. We reverse the trial court's order and remand to the trial court, which shall remand to the Department for an initial hearing.

**B. Reputational Interest**

DeLuca also contends in J.B. the Supreme Court mandated that the right to reputation is a personal right protected by the Pennsylvania Constitution and one which cannot be impaired by a government adjudication without due process.

Although <u>J.B.</u> recognized that an individual's right to reputation is protected by the Pennsylvania Constitution and entitled to due process protection in light of the circumstances in that case, the Court did not address whether a reputational interest *alone* is sufficient to invoke the statutory due process protections of the Local Agency Law, as DeLuca asserts. In view of our holding that the Local Agency Law applies to the facts here, we need not reach that issue now.

For the above reasons, we reverse the order of the trial court and remand for further proceedings consistent with this opinion.

ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cynthia DeLuca and DeLuca's Auto   :
Repair and Towing, Inc.   :
     Appellants   :
        :   No. 2401 C.D. 2015
    v.      :
        :
Hazleton Police Department and   :
Chief of Police Frank V. DeAndrea, Jr.   :

## **O R D E R**

**AND NOW**, this 28th day of July, 2016, the order of the Court of Common Pleas of Luzerne County is **REVERSED** and this case is **REMANDED** for further proceedings consistent with the foregoing opinion. Jurisdiction is relinquished.

          _____
          ROBERT SIMPSON, Judge