Officer William BARRETT

v.

**ROSS TOWNSHIP CIVIL SERVICE COMMISSION, Appellant.**

**Officer Benjamin Dripps**

v.

**Ross Township Civil Service Commission, Appellant.**

Commonwealth Court of Pennsylvania.

Argued April 17, 2012.

Decided Oct. 26, 2012.

Michael S. Sherman, Pittsburgh, for appellant.

Michael J. Witherel, Pittsburgh, for appellees.

BEFORE: LEAVITT, Judge, and McCULLOUGH, Judge, and COLINS, Senior Judge.

OPINION BY Judge LEAVITT.

The Ross Township Civil Service Commission appeals an order of the Court of Common Pleas of Allegheny County (trial court) reversing the Commission's determination that Officers William Barrett and Benjamin Dripps (collectively, Officers) were ineligible to sit for a promotional examination because they had received "formal written reprimands" less than one year before the date of the examination. The trial court found that the letters sent to the Officers by their Police Chief were not intended to be formal reprimands of the type to disqualify them from sitting for the examinations; accordingly, the Commission lacked grounds to bar the Officers from taking the exam. Discerning no error in the trial court's holding, we affirm.

In January of 2011, the Commission posted a notice of a promotional examination for the position of police lieutenant with the Ross Township Police Department. The Officers applied to take the exam. Commission rules provide that an officer is not eligible to sit for a promotional exam if he has received a "formal written reprimand" within one year of the deadline for submitting an application. Rules of the Civil Service Commission, Township of Ross § 4.4(b); Reproduced Record at 102a (R.R.____). On their applications, the Officers responded "yes" to the question of whether they had received a "formal written reprimand" within the prior year. However, they also provided an explanation that although each officer had received a disciplinary type letter, it did not constitute a "formal written reprimand." Each application contained a copy of an e-mail from the Ross Township Solicitor's Office stating that the letters in question were not intended to serve as *formal* written reprimands and, thus, would not bar the Officers' ability to sit for the promotional exam. The e-mails were

dated one week after the exam notice was posted.

The first letter, dated May 11, 2010, was sent by the Police Chief, Ralph Freedman, to Officer Dripps, a 14–year veteran. The letter stated that police officers under the supervision of Officer Dripps had not properly secured a crime scene. The Police Chief's letter identified itself as a "Letter of Reprimand." R.R. 98a. The second letter, dated August 2, 2010, was sent by the Police Chief to Officer Barrett, a 24–year veteran. The Police Chief's letter expressed concern that Barrett's private polygraph business did not conform to department rules for outside business and had the potential to create a conflict of interest; the Police Chief criticized the decision of the "prior administration" to allow Barrett to do this business. R.R. 89a. The letter identified itself as a "written reprimand" but did not use the term "formal." R.R. 90a.

Upon receiving his letter, Officer Barrett filed a grievance, which resulted in a meeting attended by Barrett, his attorney, the Police Chief, the Ross Township Solicitor, the Township Manager and union representatives. The grievance was resolved when Barrett was given an assurance that the Police Chief's letter was not a formal written reprimand and, as such, would not affect his ability to sit for the promotional exam. Further, the letter would be removed from his personnel file after a few months time.

Upon receiving his letter, Officer Dripps contacted the Police Chief to start the grievance process. However, Dripps abandoned the grievance when the Police Chief assured him that the letter would not affect Dripps' ability to sit for the promotional exam. The Police Chief also assured Dripps that the letter would be removed from his personnel file in a few months time.

In December 2010, prior to the posting of the notice for the promotional exam, the Police Chief removed his letters from each Officer's personnel file. Shortly thereafter, the Police Chief retired.

The Commission rejected the Officers' applications to sit for the promotional exam. It held that the Police Chief's letters were "formal written reprimands" that disqualified the Officers from sitting for the exam. The Officers appealed and received a hearing before the Commission.

At the hearing,[1] the Commission's solicitor, Michael Sherman, served as the hearing officer and prosecutor. To support the Commission's disqualification decisions, the solicitor offered and admitted into evidence the Police Chief's letters to the Officers, over the objections of their counsel. The solicitor made evidentiary rulings on the case presented by the Officers, and he advised the Commission on the adjudication.

Barrett and Dripps testified about why the Police Chief's letters were not formal written reprimands. They had responded "yes" to the application question, lest they be accused of dissembling about the letters sent to them by the Police Chief. Barrett testified that he denied the factual allegations in his Police Chief's letter at the grievance meeting. However, he agreed not to pursue his grievance after he was assured that the letter was not a "formal written reprimand" and would not affect his ability to sit for a promotional exam. Dripps testified that he immediately contacted the Police Chief because he also was concerned that the letter would affect his pay and his eligibility for promotions. Because of the Police Chief's assurances that the letter would be removed from his file and have no impact on his ability to sit for

promotional exams, he agreed to drop the matter. Otherwise, he would have grieved the letter. Dripps offered into evidence a text message on his cellphone from the Police Chief that stated, "Took your letter out. You are clear for test. December 29, 2010." R.R. 64a. The evidence was refused admission.

The Township's solicitor, Bonnie Brimmeier, confirmed that at the meeting on Barrett's grievance, everyone agreed that the Police Chief's letter would not impede Barrett's eligibility to take the exam. She also testified that the Township's Board of Commissioners was informed, in executive session, of the resolution. The commissioners agreed that the letter was not intended to be a "formal written reprimand" or an action that would disqualify Barrett from sitting for the exam. Brimmeier confirmed that the e-mails attached to the Officers' applications were written at her direction and that she agreed with the opinion stated therein. Brimmeier noted that her knowledge of Dripps' case was secondhand because she did not meet him.

Officer Matthew Grubb, vice president of the Ross Township Police Association, corroborated the Officers' testimony. He explained that everyone understood the Police Chief's letters were not intended to be formal written reprimands. He also testified that he was notified by the Police Chief when the letters were removed from the Officers' personnel files.

The Commission found that the Officers' testimony about the Police Chief's assurances was hearsay and could not support a factual finding. Likewise, it found that the Township Solicitor's opinions about the legal significance of the Police Chief's letters were irrelevant. The Commission found

1. The Officers' appeals were consolidated at the hearing before the Commission, and this Court also consolidated their appeals.

that the Police Chief's letters must have been formal written reprimands because a grievance is not available for a lesser disciplinary action. It also noted that the agreement of the Township Supervisors to resolve Barrett's grievance violated the Sunshine Act, 65 Pa.C.S. §§ 701–716, and, thus, was a nullity. The Commission drew a negative inference from the fact that the Police Chief did not testify and found that his testimony, if given, would have refuted the Officers' claims that his letters were not intended to be formal written reprimands. The Commission found, in any case, that the Police Chief was not authorized to remove his letters from the Officers' personnel files. In accordance with these factual findings, the Commission found that the Officers had received formal written reprimands within the year prior to the promotional exam, which rendered them ineligible to take the exam. The Officers appealed to the trial court.

Before the trial court, the Officers argued that the Commission's factual findings were not supported by substantial evidence. Specifically, they argued that the Commission erred in drawing a negative inference from the Police Chief's absence from the hearing. They also argued that their evidence proved that they did not receive formal written reprimands. In response, the Commission argued that the Officers did not have a right to appeal because the Commission's decision to bar them from the exam did not impact a protected property interest, but, in any case, substantial evidence supported its findings. The trial court reversed the Commission.

First, the trial court held that the Officers had a right to appeal. Their interest in being allowed to sit for the promotional examination, for which they met all qualifi- cations, was in the nature of a protected property interest.

Second, the trial court held that the Commission's finding that the Officers had received formal written reprimands was not supported by substantial evidence. The Commission erred in drawing a negative inference from the Police Chief's absence and using that inference as the basis of a factual finding. The trial court found that the circumstances warranting use of the adverse inference rule did not exist because the Police Chief was a witness available to both parties and because his testimony would have been merely cumulative of other evidence.

Third, the trial court found that the Township Supervisors' executive session did not change Barrett's discipline but, simply, clarified the meaning of the Police Chief's letter. The trial court agreed that determining eligibility to sit for a Civil Service examination was beyond the authority of the Police Chief or the Township. On the other hand, the trial court reasoned that the Township retains the exclusive prerogative to determine what level of discipline to impose on an employee and that the Commission exceeded its authority by effectively increasing the level of discipline intended.

Lastly, the trial court found that the Officers had been denied a hearing that satisfied due process. This was because the Commission combined its investigatory, prosecutorial and adjudicatory functions in a single individual: the Commission's solicitor.

In accordance with these rulings, the trial court found the Officers eligible to sit for the promotional exam. The Commission appealed to this Court.

On appeal,[2] Commission raises three issues. First, the Commission argues that

---

**2.** This Court's scope of review is limited, where a full and complete record is made, to

the Officers failed to preserve the legal arguments they make in this appeal and, thus, this Court must disregard those arguments. Second, the Commission argues that the Officers do not have a right to appeal their eligibility for the promotional exam because they do not have a property right in being promoted. Third, the Commission argues the trial court erred in finding that the Officers did not receive "formal written reprimands" within one year of the promotional exam. We address these issues seriately.

In its first issue, the Commission argues that the Officers waived their ability to respond to the Commission's appeal as they do because their responsive arguments have not been preserved. The Officers respond that their appeals to the trial court identified the Commission's errors, both in its fact-finding and its legal analysis. The Officers point out that it is the burden of the appellant, *i.e.*, the Commission, not the appellees, to preserve issues for appeal to this Court. In any case, the Officers argue that their brief to the trial court belies the Commission's waiver argument. We agree.

■ The Officers presented the trial court with six specific alleged errors on the part of the Commission. Some errors, such as the one raising lack of substantial evidence, cannot be supported with cita-tions to statutes, regulations or case law, as argued by the Commission. In any case, it was the Commission's burden, as appellant, to preserve the issues for appeal. *See Commonwealth v. Spotz*, 552 Pa. 499, 510 n. 5, 716 A.2d 580, 585 n. 5 (1998) ("[T]his Court has held that an issue will be deemed waived when an *appellant* fails to properly explain or develop it in his brief." (emphasis added)); *see also Commonwealth v. LaCava*, 542 Pa. 160, 188, 666 A.2d 221, 235 (1995), *Commonwealth v. Ragan*, 538 Pa. 2, 37, 645 A.2d 811, 828 (1994). We reject the Commission's first assignment of error.

■ In its second issue, the Commission argues that there is no property right in a promotion and, thus, the decision of the Commission to prevent the Officers from sitting for the exam was not an appealable adjudication. The Local Agency Law defines an "adjudication" as "any final order, decree, decision, determination or ruling by an agency *affecting* personal or *property rights,* privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made." 2 Pa.C.S. § 101 (emphasis added).[3] The Commission contends that because its decision was not an adjudication affecting a protected property right, the Officers had no right to appeal under Section 752 of the Local Agency

---

determining whether constitutional rights were violated, an error of law was committed, or if the decision is supported by substantial evidence. *Moorehead v. Civil Service Commission of Allegheny County*, 769 A.2d 1233, 1237–38 (Pa.Cmwlth.2001). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Scott v. Unemployment Compensation Board of Review*, 36 A.3d 643, 647 n. 4 (Pa.Cmwlth.2012).

3. Section 101 of the Local Agency Law defines "adjudication" as:

Any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made. The term does not include any order based upon a proceeding before a court or which involves the seizure or forfeiture of property, paroles, pardons or releases from mental institutions.

2 Pa.C.S. § 101.

Law.[4]

The Officers rejoin that the Commission's own rules provide a right to appeal a decision of the Commission to refuse to certify an applicant for an examination. Further, Commission Rule 4.7 requires these hearings to be conducted in accordance with the Local Agency Law.[5] This Rule would make no sense if a person barred from taking a promotional examination did not have a protected property interest at stake.

An individual has a property interest where he has an enforceable expectation under statute or contract. *Amesbury v. Luzerne County Institution District*, 27 Pa.Cmwlth. 418, 366 A.2d 631, 633 (1976). As has been explained by the United States Supreme Court,

> [p]roperty interests ... are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure cer-

tain benefits and that support claims of entitlement to those benefits.

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Regulations can also be the source of a substantive property right. *Girard School District v. Pittenger*, 481 Pa. 91, 94–95, 392 A.2d 261, 262 (1978). Where a regulatory scheme provides for a review of an adverse governmental decision, this "sheds light on the legislature's intention in conferring a property right" on those with the appeal right. *Pipkin v. Pennsylvania State Police*, 548 Pa. 1, 7, 693 A.2d 190, 193 (1997).

The Officers' property interest in taking the examination can be confirmed twice. First, Section 635(a) of the First Class Township Code,[6] 53 P.S. § 55635(a), provides, in relevant part, that "[a]ll [police promotion] examinations *shall* be open to all applicants who have the minimum qualifications required by the rules and regulations." 53 P.S. § 55635 (emphasis added).[7]

---

4. Section 752 of the Local Agency Law states:
   Any person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure).
   2 Pa.C.S. § 752.

5. ·Section 4.7 of the Township of Ross Civil Service Commission Rules states:
   *Any applicants or other persons who believe that they are aggrieved by the actions of the Commission in refusing to examine or to certify them as eligible after examination, may request a hearing before the Commission.* Within ten (10) days after such request, the Commission shall designate a time and place for the hearing which shall be conducted pursuant to the procedures set forth in the Local Agency Law, 2 Pa.C.S. § 101 *et. seq.* The applicant or aggrieved party must make their request for a hearing in writing within ten (10) calendar days of the date when the party knew or should

have known of the Commission's action which is being challenged.
   R.R. 103a–104a (emphasis added).

6. The First Class Township Code, Act of June 24, 1931, P.S. 1206, *as amended,* 53 P.S. §§ 55101–58502.

7. Section 635 of the First Class Township Code states:
   (a) The commission shall make rules and regulations to be approved as provided in section 630 hereof, providing for the examination of applicants for positions in the police force and as paid operators of fire apparatus and for promotions, which rules and regulations shall prescribe the minimum qualifications of all applicants to be examined and the passing grades. All examinations for positions or promotions shall be practical in character and shall relate to such matters and include such inquiries as will fairly test the merit and fitness of the persons examined to discharge the duties of the employment

Second, Section 4.7 of the Rules of the Ross Township Civil Service Commission provides for a right to a hearing if the Commission denies an individual the opportunity to sit for a promotional examination.[8] Further, Section 4.7 provides that this hearing must follow the procedures set forth in the Local Agency Law. In sum, the applicable statute and Commission rules support the conclusion that the Officers had a protected property interest at stake when they were denied the opportunity to sit for a promotional examination.

The Commission cites several cases for a contrary position. They are distinguishable.

The Commission first cites *Guthrie v. Borough of Wilkinsburg*, 505 Pa. 249, 478 A.2d 1279 (1984), for the proposition that letters of reprimand are not adjudications. In *Guthrie*, the recipients of the reprimands had filed a Local Agency Law appeal to protect their interest in a "clean personnel file." *Id.* at 257, 478 A.2d at 1282. Our Supreme Court held that they had no right to appeal because of a *"theoretical effect on possible promotions* or future employment prospects." *Id.* (emphasis added). Speculative employment opportunities were held not to create a cognizable property interest. This case is different. At issue here is a scheduled promotional examination to which the Officers have been denied access.

The Commission relies upon *Marvel v. Dalrymple*, 38 Pa.Cmwlth. 67, 393 A.2d 494 (1978), for the proposition that its determinations were not appealable by the Officers. At issue in *Marvel* was an officer's effort to use the Right–to–Know Act[9] to obtain certain promotional exam materi-

---

sought by them. All examinations shall be open to all applicants who have the minimum qualifications required by the rules and regulations. Each applicant for examination for an original position shall:

(1) be subject to the regulations adopted by the commission;

(2) either before or after being admitted to the regular examination held by the commission, be required to submit to a physical fitness or agility examination that is job-related and consistent with business necessity;

(3) if made a conditional offer of employment, be given a physical and psychological medical examination in accordance with section 643 of this act; and

(4) be subject to a background investigation. Background investigations may be restricted to those candidates on an eligibility list or those to be certified to the township commissioners for appointment in accordance with section 638 of this act.

(a.1) Each applicant for promotion shall be subject to the regulations adopted by the commission and to examination and selection in accordance with section 642 of this act. Physical fitness or agility examinations that are job related and consistent with business necessity and physical and psychological medical examinations may, but need not, be required for promotions.

(b) Public notice of the time and place of every examination, together with the information as to the kind of position or place to be filled, shall be given by publication once in a newspaper of general circulation in the township or in a newspaper circulating generally in the township at least two weeks prior to each examination, and a copy of the notice shall be prominently posted in the office of the commission or other public place.

(c) The commission shall post in its office the eligible list containing the names and grades of those who have passed the examination.

Section 635 was added by the Act of May 27, 1949, P.L.1955, *as amended*, 53 P.S. § 55635.

8. See note 5 for the text of Section 4.7 of the Rules of the Ross Township Civil Service Commission.

9. Act of June 21, 1957, P.L. 390, *as amended*, 65 P.S. §§ 66.1–66.4, repealed by Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104, effective January 1, 2009.

als. In passing, this Court observed that there was no property right in a promotion. However, in doing so, we observed that there is a distinction between a promotion and "be[ing] fairly and objectively examined solely in terms of . . . merit and fitness for [a] job, these being the criteria for promotion." *Id.* at 497. Stated otherwise, *Marvel* suggests that there is a property interest in having fair access to a public employment position.

More instructive is *Pennsylvania Game Commission v. State Civil Service Commission (Taccone),* 789 A.2d 839 (Pa. Cmwlth.2002). There, we held that applicants had a protected property interest in being placed on an "Eligible List" when they meet the "requisite qualifications" for a government job. *Id.* at 845. In that case, two applicants for the position of Game Conservation Officer Trainee were removed from the eligibility list because of certain responses they gave during in-person interviews. Both applicants appealed to the State Civil Service Commission, which reinstated the applicants to the list. The Game Commission appealed, arguing that the State Civil Service Commission should have given the Game Commission a hearing before reinstating the applicants to the list. This Court rejected the Game Commission's argument, noting that *it* did not have a property interest but, rather, the applicants did have a property interest at stake because they "met the 'requisite qualifications.' " *Id.* at 845.

The Officers are at a different stage of the application process than the applicants in *Taccone.* Nevertheless, *Taccone* supports the legal conclusion that being removed from a list of persons eligible for a public employment position involves a protected property interest. That was the situation facing the Officers.

■ We hold that the Officers had a protected property interest in sitting for

the promotional examination and that the Commission's determination was an appealable adjudication. Accordingly, we turn to the Commission's third issue, *i.e.,* that the trial court erred in finding that the Officers did not receive "formal written reprimands" that disqualified them from taking the promotional exam.

The Commission argues that the evidence shows that the Officers believed the Police Chief's letters were "formal written reprimands" because otherwise they would not have instigated grievances. The Commission also argues that Rule 101(B)(4) of the Police Department Manual requires written reprimands to remain in an officer's personnel file for one year and there is no process for expungement of reprimands, only deactivation. The Township Solicitor's opinion on this matter cannot change formal written reprimands into something else. Further, because the Township Supervisors never took a public vote on Barrett's grievance, they violated the Sunshine Act, rendering the grievance resolution invalid. Finally, the Commission argues that the trial court erred in rejecting the Commission's negative inference from the Police Chief's absence at the hearing, noting that the Commission could not rely on the hearing evidence presented by the Officers, including the Police Chief's text message to Dripps.

The Officers respond that the trial court did not err in any respect. The Commission's negative inference was improper because every witness confirmed that the Police Chief's letters were not intended to be formal written reprimands. Further, agencies may rely upon hearsay. The Officers argue that the Police Chief has the ultimate authority to implement the Police Manual, and it was his decision to pull the letters from their personnel files.

The Rules of the Civil Service Commission do not define "formal written reprimand."[10] In its adjudication, the Commission explained that

[t]here is no 'informal' written reprimand. "Formal" merely refers to the dictionary definition (i.e., something 'made or done in accordance with procedures that ensure validity').

Commission's Adjudication at 2, n. 2; R.R. 120a. The Ross Township Police personnel policies provide for nine possible disciplinary actions, including a "Written Reprimand." R.R. 109a–112a. A written reprimand is a "written disciplinary action outlining the misconduct of a member" that is issued by the chief of police and must contain a "complete statement of facts of the misconduct;" it "will remain active in the official township personnel files for at least one year." R.R. 110a. The Manual also provides as follows:

If no further performance problems occur during the active period, the disciplinary procedure will be formally deactivated. The Chief of Police will initiate a memo advising the officer of the inactive status of the discipline.

R.R. 110a.

As noted by the Commission, the "formalities" in the Manual were not followed with respect to the letters in question. The Police Chief removed his letters from the Officers' personnel files; he did not "deactivate" them in accordance with the Police Personnel Manual procedures for formal reprimands. Stated otherwise, the Police Chief did not handle his letters in "accordance with procedures that ensure validity." Commission Adjudication at 2, n. 2; R.R. 120a. However, these failures to follow the procedures in the Manual support the trial court's finding that the Police Chief's letters were not intended to be "formal written reprimands." Otherwise, the procedures in the Police Personnel Manual would have been followed.[11]

The Commission argues that by initiating grievances, the Officers signaled their belief that the letters were formal written reprimands. This is not a persuasive argument. What Barrett and Dripps believed before conferring with the Police Chief is irrelevant. What is relevant is the belief of the Police Chief and the belief of the Township Supervisors, and their counsel, that the letters were not formal written reprimands governed by the Police Personnel Manual. Likewise, the Commission's Sunshine Act argument fails because it assumes that the letters were intended to be formal written reprimands that could be grieved. The evidence

---

**10.** Section 4.4(b) of the Rules of the Civil Service Commission states, in relevant part:

Each applicant for a promotional rank shall meet the following qualifications:

b. *Written Reprimands.*

All applicants for a promotional position shall have not received a formal written reprimand for one year prior to the deadline for submitting applications, and have not been suspended without pay at any time within five (5) years prior to the deadline for submitting applications. Any formal written reprimand or suspension to which the applicant has timely appealed pursuant to a grievance procedure or these Rules and Regulations shall be disregarded unless the appeal is resolved prior to the creation of the Eligibility List.

R.R. 102a.

**11.** We agree with the Commission that simply pulling a "formal written reprimand" from a personnel file does not mean it was not formal when issued. The requirement to keep a written reprimand in a file for one year appears to be a consequence of a formal written reprimand, not a criterion. However, the fact that the letters were pulled by the Police Chief evidenced his understanding that they were not formal written reprimands governed by the Manual.

showed otherwise, as found by the trial court.

■ The Commission argues that it was required to find that the Police Chief would have testified that the letters were formal written reprimands because the hearsay rule required it to disregard the Officers' hearsay evidence. The Commission fails to recognize that in administrative proceedings, hearsay is admissible evidence when it is corroborated or otherwise shows indicia of reliability. *Unemployment Compensation Board of Review v. Ceja*, 493 Pa. 588, 605, 427 A.2d 631, 640 (1981). That was the case here.

■ Further, the missing witness adverse inference rule is only permitted in narrow circumstances identified by our Supreme Court as follows:

[W]hen a potential witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not merely be cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference that it would have been unfavorable.

*Commonwealth v. Manigault*, 501 Pa. 506, 510–11, 462 A.2d 239, 241 (1983) (quotations, citations and emphasis omitted). An adverse inference cannot be used when:

1. The witness is so hostile or prejudiced against the party expected to call him that there is a small possibility of obtaining unbiased truth;

2. The testimony of such a witness is comparatively unimportant, cumulative, or inferior to that already presented;

3. The uncalled witness is equally available to both parties;

4. There is a satisfactory explanation as to why the party failed to call such a witness;

5. The witness is not available or not within the control of the party against whom the negative inference is desired; and,

6. The testimony of the uncalled witness is not within the scope of the natural interest of the party failing to produce him.

*Commonwealth v. Harley*, 275 Pa.Super. 407, 418 A.2d 1354, 1357 (1980).

■ Here, the Police Chief, albeit retired, was available to both the Officers and the Commission. Further, as found by the trial court, his testimony, if given, would have been cumulative of that given by other witnesses. The Commission simply erred in using an adverse inference to make its factual finding that the Police Chief's letters were intended to be formal written reprimands.

■ Finally, the Commission argues that Dripps could not rely on the Police Chief's assurances to him, relying on one of its own previous decisions, *Appeal of David Syska*, (Ross Township, Civil Service Commission, June 23, 2009). In *Syska*, the Commission held that Syska could not rely on an assurance given by the Police Chief that the "C" grade point average required to sit for entry level examinations was going to be lowered. In that case, however, the Police Chief was not the final authority on the minimum grade point rule. By contrast, the Police Chief has full authority and responsibility for disciplinary matters. *See* Section 101(C)(1) of Ross Township Police Personnel Policies, R.R. 113a. Thus, the Police Chief's assurances to Dripps' were relevant.[12]

12. Because we decide all substantive issues in favor of the Officers, we need not address the trial court's holding that the Ross Township Civil Service Commission impermissibly com-

For the above-stated reasons, we affirm the decision of the trial court.

### ORDER

AND NOW, this 26th day of October, 2012, the order of the Court of Common Pleas of Allegheny County dated August 19, 2011 in the above-captioned matter is hereby AFFIRMED.

mingled the prosecutorial and adjudicatory functions in a single individual, which violates due process. *See, e.g., Lyness v. State Board of Medicine,* 529 Pa. 535, 547, 605 A.2d 1204, 1210 (1992).