******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

STATE OF CONNECTICUT *v.* RICARDO K. WILLIAMS
(AC 43226)

DiPentima, C. J., and Lavine and Bright, Js.*

*Syllabus*

Convicted, after a jury trial, of sexual assault in the first degree, sexual assault in the fourth degree and risk of injury to a child, the defendant appealed to this court. He claimed that he was entitled to a new trial on the basis of alleged prosecutorial improprieties during the state's closing argument and the state's examination of its witnesses, which resulted in a denial of his due process right to a fair trial, and that the evidence was insufficient to support the mandatory minimum sentence imposed by the court pursuant to statute (§ 53a-70 (b) (2)). *Held*:

1. The defendant could not prevail on his claim that he was deprived of his right to a fair trial as a result of alleged prosecutorial improprieties: the prosecutor's references to the complainant as the "victim" did not constitute prosecutorial impropriety as the prosecutor's use of the word "victim" was relatively infrequent, the court repeatedly instructed the jurors that the arguments of counsel were not evidence, the prosecutor reminded the jury at the beginning of her rebuttal that closing arguments were "arguments," and, when defense counsel objected to the prosecutor's use of the word "victim" during closing argument, the trial court sustained the objection and immediately instructed the jury to disregard it, whereby the prosecutor promptly apologized in front of the jury; moreover, the prosecutor's statements expressing her opinion on the credibility of the victim during closing argument were proper argument because they reflected reasonable inferences that the jury could have drawn from the evidence produced at trial, and, as it was the defendant's theory of defense that the evidence showed that that the victim made up the allegations against the defendant, the prosecutor was allowed to address that argument in her closing argument; furthermore, the prosecutor did not improperly elicit comments on the credibility of the victim from the state's witnesses, as the witnesses' inappropriate answers to otherwise proper questions did not constitute prosecutorial impropriety.

2. The defendant's unpreserved claim that there was insufficient evidence for the jury to find beyond a reasonable doubt that the victim was under ten years of age at the time of the first sexual assault to support the mandatory minimum sentence imposed by the court pursuant to § 53a-70 was unavailing, as the victim testified that she was nine years old at the time of the first sexual assault, and this testimony, in conjunction with her testimony concerning the dates of the other incidents, provided a sufficient evidentiary basis for the jury to answer the interrogatory in the affirmative; moreover, even though the jury was presented with conflicting evidence as to the victim's age at the time of the first sexual assault, the jury was free to believe the victim's testimony that she was nine years old at the time, and, therefore, this court concluded that the evidence was sufficient to support the jury's finding.

Submitted on briefs April 6—officially released September 29, 2020

*Procedural History*

Substitute information charging the defendant with two counts of the crime of sexual assault in the first degree and one count each of the crimes of sexual assault in the fourth degree and risk of injury to a child, brought to the Superior Court in the judicial district of New Haven, geographical area number twenty-three, and tried to the jury before *Vitale, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed*.

*Alice Osedach*, assistant public defender, for the

appellant (defendant).

*Samantha L. Oden*, deputy assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, *Mary A. Sanangelo*, senior assistant state's attorney, and *Maxine Wilensky*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, Ricardo K. Williams, appeals from the judgment of conviction, rendered after a jury trial, of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), one count of sexual assault in the fourth degree in violation of General Statutes (Rev. to 2013) § 53a-73a (a) (1) (A) and one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (1). On appeal, the defendant claims that (1) he was deprived of the right to a fair trial as a result of prosecutorial impropriety and (2) the evidence was insufficient to support the mandatory minimum sentence imposed by the court under § 53a-70 (b) (2). We are not persuaded and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In 2012, the victim[1] lived on the second floor of a multifamily apartment with her mother and her siblings. The defendant was in a relationship with the victim's mother at the time and often would spend the night at the apartment.

In the autumn of 2012, when the victim was nine years old, she was sleeping on the couch in the living room of the apartment. She awoke to the defendant hovering over her. The defendant picked her up, carried her into her bedroom, laid her on her back on the bed and, after putting on a condom, sexually assaulted her by vaginal intercourse, causing her to bleed and to experience pain.

A second incident occurred sometime that winter, after the victim and her family had moved to a new apartment. On that night, the victim and her younger brother had fallen asleep on the floor of their playroom. She awoke to the defendant tapping her and telling her to come into the adjoining living room. The defendant laid her on the floor, removed her underwear and sexually assaulted her, also by vaginal intercourse.

A third incident occurred on December 14, 2013. That morning, the victim was lying on the bed in her sibling's bedroom. The defendant, who had been making breakfast, entered the room, got onto the bed with the victim and kissed the victim's mouth and neck, as well as her chest, breasts, stomach, vagina and inner thighs above the clothes. The assault ended when the victim's mother called for the defendant. On June 18, 2015, the victim met with Brian Schweinsburg, a clinical psychologist specializing in neuropsychology, in New Haven. Her mother had arranged the appointment due to her concerns about the victim's increased levels of depression and recent suicide attempts. Schweinsburg conducted an assessment interview with the victim, who revealed that the defendant had "raped" her on multiple occasions. Following the interview, Schweinsburg arranged for an ambulance to transport the victim to the hospital

for further psychiatric evaluation. Schweinsburg also made oral and written reports to the Department of Children and Families (department) regarding the victim's disclosure of the sexual assaults.

The victim was discharged from the hospital the following morning and returned to her mother's apartment. That day, a department investigator made an unannounced visit to the home, but was denied access by the victim's mother. On July 8, 2015, the victim was brought to Yale New Haven Hospital for a forensic interview regarding her disclosures of sexual assault by the defendant. Following the interview, Lisa Pavlovic, a physician at the Yale Child Abuse Clinic, conducted a medical examination of the victim. The examination revealed that the victim had suffered a penetrating injury to her vagina.

Thereafter, on July 29, 2015, Kristine Cuddy, a detective with the New Haven Police Department, interviewed the defendant concerning the victim's allegations. In October, 2015, the defendant was arrested and, in a 2017 long form information, was charged in counts one and two with sexual assault in the first degree, in count three with sexual assault in the fourth degree and in count four with risk of injury to a child. The case proceeded to a trial by jury on that information. On January 11, 2018, the jury found the defendant guilty of all counts. The jury, in response to a written interrogatory, specifically found that the victim was under ten years of age at the time of the sexual assault alleged in the first count of the long form information.

Following the verdict, the defendant filed a motion for new trial nunc pro tunc, claiming prosecutorial impropriety. The court denied the motion and thereafter sentenced the defendant on count one to ten years of incarceration in accordance with the statutory minimum under § 53a-70 (b) (2),[2] followed by five years of special parole, on count two to ten years of incarceration, five years mandatory, followed by five years of special parole, on count three to two years and one day of incarceration followed by two years of special parole, all to be served consecutively, and on count four to ten years of incarceration to be served concurrently to all of the other counts, for a total effective term of twenty-two years and one day of incarceration, fifteen years of which are mandatory, followed by twelve years of special parole. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that he was deprived of the right to a fair trial as a result of prosecutorial impropriety. Specifically, he argues that the prosecutor's impropriety during direct examination and closing arguments deprived him of his due process right to a fair trial. The defendant contends that the prosecutor acted

improperly in three ways: (1) by referring to the complainant as the "victim," (2) by expressing her opinion concerning the credibility of the victim in closing argument and (3) by eliciting comments on the credibility of the victim from the state's witnesses. In the alternative, he argues that this court should exercise its supervisory powers to reverse his conviction because of "the flagrant prosecutorial improprieties in this case." We disagree with the first argument and decline the invitation to consider the alternative argument.

The record reveals that the defendant did not specifically object to all of the alleged instances of impropriety that he now claims. This failure does not preclude our review. It is well settled that "a defendant who fails to preserve claims of prosecutorial [impropriety] need not seek to prevail under the specific requirements of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989) [as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015)], and, similarly, it is unnecessary for a reviewing court to apply the four-pronged *Golding* test. . . . The reason for this is that the defendant in a claim of prosecutorial [impropriety] must establish that the prosecutorial [impropriety] was so serious as to amount to a denial of due process . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Warholic*, 278 Conn. 354, 360, 897 A.2d 569, 578 (2006); accord *State* v. *Payne*, 303 Conn. 538, 560, 34 A.3d 370, 386 (2012).

Accordingly, we undertake our review of these claims with a two step analysis. It is well established that "[i]n analyzing claims of prosecutorial [impropriety], we engage in a two step analytical process. The two steps are separate and distinct: (1) whether [impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived a defendant of his due process right to a fair trial. . . . [W]hen a defendant raises on appeal a claim that improper remarks by the prosecutor deprived the defendant of his constitutional right to a fair trial, the burden is on the defendant to show . . . that the remarks were improper . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Taft*, 306 Conn. 749, 761–62, 51 A.3d 988 (2012).

"If we conclude that prosecutorial impropriety occurred, we then decide whether the defendant was deprived of his due process right to a fair trial by considering [the factors set forth in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987)] [1] the extent to which the [impropriety] was invited by defense conduct or argument . . . [2] the severity of the [impropriety] . . . [3] the frequency of the [impropriety] . . . [4] the centrality of the [impropriety] to the critical issues in the case . . . [5] the strength of the curative measures adopted . . . and [6] the strength of the state's case. . . . As is evident upon review of these factors, it is not the prosecutor's conduct alone that guides our

inquiry, but, rather, the fairness of the trial as a whole." (Citation omitted; internal quotation marks omitted.) *State* v. *Albert D.*, 196 Conn. App. 155, 162–63, 229 A.3d 1176, cert. denied, 335 Conn. 913, 229 A.3d 118 (2020). With those principles in mind we address each of the defendant's claims of impropriety in turn.

A

The defendant first claims that the prosecutor acted improperly by referring to the complainant as the "victim" during closing argument.[3] Specifically, the defendant directs us to the following four statements. First, the prosecutor stated: "There is a stipulation in this case about the ages and the dates of birth, so you don't have to say oh, how old was the defendant or how old was the victim you have their dates of birth." Second, the following exchange occurred:

"[The Prosecutor]: The victim testified a week ago, a little over a week ago—

"[Defense Counsel]: Objection as to the use of the term victim, Your Honor.

"The Court: Sustain the objection. Jury disregard it.

"[The Prosecutor]: I'm sorry, I apologize. The complainant. We are not calling her a victim; I apologize."

Third, the prosecutor stated: "It sounds like [the defendant] was a good authority figure in the house, maybe a little stability to a crazy mother, but maybe that made her a perfect victim." Finally, the prosecutor commented that "[h]e just pulls up his pants and leaves and leaves her there. She was the perfect victim." The state argues that these statements, given their infrequency and context, do not amount to impropriety. We agree with the state.

In cases where the use of the term "victim" is at issue, "[o]ur Supreme Court has stated that a *court's* repeated use of the word victim with reference to the complaining witness is inappropriate when the issue at trial is whether a crime has been committed. . . . A different set of circumstances exists when the person making reference to the complaining witness is the prosecutor." (Emphasis added.) *State* v. *Rodriguez*, 107 Conn. App. 685, 701, 946 A.2d 294, cert. denied, 288 Conn. 904, 953 A.2d 650 (2008).

"This is so, our courts have held, for two basic reasons. First, although a prosecutor's reference to the complainant as the 'victim,' in a trial where her alleged victimization is at issue, risks communicating to the jury that the prosecutor personally believes that she in fact is a victim, and thus the defendant is guilty of victimizing her, the isolated or infrequent use of that term in a trial otherwise devoid of appeals to passion or statements of personal belief by the prosecutor will probably be understood by jurors to be consistent with the prosecutor's many proper references to the com-

plainant as the complainant or the alleged victim, particularly where the prosecutor openly acknowledges and willingly accepts the state's burden of proving the defendant guilty beyond a reasonable doubt solely on the basis of the evidence admitted at trial. Second, when a prosecutor uses that term in argument, where his or her role is generally expected and understood to be that of an advocate, such isolated or infrequent references to the complainant as the 'victim' are likely to be understood by jurors as parts of a proper argument that the evidence has established the complainant's victimization, and thus the defendant's guilt, beyond a reasonable doubt. In either of those circumstances, the prosecutor's use of the term 'victim' in reference to the complainant is not considered improper because such usage does not illicitly ask the jury to find the defendant guilty on the basis of the prosecutor's personal belief in the complainant's victimization or the defendant's guilt." *State* v. *Thompson*, 146 Conn. App. 249, 268–69, 76 A.3d 273, cert denied, 310 Conn. 956, 81 A.3d 1182 (2013).

A brief review of the relevant case law will facilitate our analysis of this argument. In *State* v. *Warholic*, supra, 278 Conn. 370, our Supreme Court held that reference to the complainant as the "victim" twice during closing argument did not amount to impropriety because "the jury was likely to understand that the state's identification of the complainant as the victim reflected the state's contention that, based on the state's evidence, the complainant was the victim of the alleged crimes." The court did, however, caution the state against "making excessive use of the term 'victim' to describe a complainant when the commission of a crime is at issue  . . . ." Id., 370 n.7.

In *State* v. *Rodriguez*, supra, 107 Conn. App. 703, in holding that the prosecutor's "sporadic" references to the complainant as the "victim" did not amount to impropriety, this court stated that "[j]urors understand the respective roles of the prosecutor and defense counsel. It should not be assumed that jurors will be unduly influenced by the prosecutor's use of the word victim." In that case, because this court found that an evidentiary basis existed for the jury to conclude that the complainant was indeed the victim of the offense, the prosecutor's use of the word victim was unlikely to confuse the jury and constituted a proper rhetorical argument. Id.

Likewise, in *State* v. *Kurrus*, 137 Conn. App. 604, 621, 49 A.3d 260, cert. denied, 307 Conn. 923, 55 A.3d 556 (2012), this court did not find impropriety when the prosecutor used the word "victim" three times at the end of his closing argument, told the jury at the beginning of closing argument that his statements were argument, and the court instructed the jurors in its instructions that closing arguments were not testimony, but merely statements to help them interpret the evidence.

This court stated that given these factors it "[would] not assume that the jurors were unduly influenced by the prosecutor's isolated use of the word victims." Id.

Cases in which our courts have determined that references to the complainant as the "victim" constituted impropriety concerned more obvious and frequent uses of the term as compared to the cases discussed. See, e.g., *State* v. *Albino*, 130 Conn. App. 745, 24 A.3d 602 (2011) (distinguishing *Warholic* and *Rodriguez* and holding that prosecutor's reference to the complainant as "the victim" approximately twenty-seven times was improper), aff'd, 312 Conn. 763, 97 A.3d 478 (2014); *State* v. *Thompson*, supra, 146 Conn. App. 271 (finding that prosecutor's use of word "victim" seven times in reference to complainant, each of which was subject to timely defense objection all of which were sustained by the court without opposition by the state, was improper).

Here, the defendant identifies four instances when the prosecutor used the word "victim." The defendant attempts to distinguish *Kurrus* by noting that here, unlike in *Kurrus*, the prosecutor did not begin her closing argument by expressly telling the jury that her arguments are solely arguments and not evidence. This contention is unpersuasive. The court repeatedly instructed the jurors that the arguments of counsel are not evidence[4] and the prosecutor reminded the jury at the beginning of her rebuttal that closing arguments are "arguments." Moreover, when defense counsel objected to the prosecutor's use of the word "victim" during closing argument, the trial court sustained the objection and immediately instructed the jury to disregard it, whereby the prosecutor promptly apologized in front of the jury. See *State* v. *Ubaldi*, 190 Conn. 559, 563, 462 A.2d 1001 ("[w]e have often held that a prompt cautionary instruction to the jury regarding improper prosecutorial remarks obviates any possible harm to the defendant"), cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983).

Given these circumstances and the prosecutor's relatively infrequent use of the word victim we find this case to be similar to *Kurrus* and conclude that the prosecutor's references to the complainant as the "victim" did not constitute prosecutorial impropriety.[5]

B

The defendant next argues that the prosecutor acted improperly by expressing her opinion on the credibility of the victim during closing argument. The state responds that the prosecutor's comments were proper argument because they reflected reasonable inferences that the jury could have drawn from the evidence produced at trial. We agree with the state.

We begin by detailing the challenged statements and the context in which they arose. During closing argu-

ment, the prosecutor first stated: "It is the state's position—is that [the victim] was credible and she was being consistent." In the second challenged statement the prosecutor stated: "It is your job to assess the credibility of [the victim]. She was here. You also have her video. If you need to, watch her video and compare it with what she told you live and see how consistent she is and how credible she is." The third statement was: "Watch [the video]. She wasn't coached. They asked what happened, show us. That's not a false accusation. A false accusation does not have graphic detail and sensory impressions."

The fourth challenged statement concerned the motives of the victim: "What motivation would she have to talk about [the defendant] after [the defendant and the victim's mother] had already broken up? Yes, maybe a motivation to get out of mom's house certainly. There's no motivation to fabricate a story against [the defendant]; he was long gone."

The defendant also challenges statements made during the state's rebuttal argument to the jury. In the first statement, the prosecutor stated: "And again, the state is going to ask you again to look at the credible, consistent evidence of [the victim] when she was here, [the victim] on her video. Watch that video again. You decide." In the second challenged statement in rebuttal, the prosecutor indicated that "[the victim] said [the defendant was the person who had sexually assaulted her], there's medical evidence, she was consistent, she was credible." In the last challenged statement, the prosecutor asked: "How could she make a false accusation and have a torn hymen?"

It is well settled that "[a] prosecutor may not express his [or her] own opinion, directly or indirectly, as to the credibility of the witnesses. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony, and are particularly difficult for the jury to ignore because of the prosecutor's special position. . . . Put another way, the prosecutor's opinion carries with it the imprimatur of the [state] and may induce the jury to trust the [state's] judgment rather than its own view of the evidence. . . . Moreover, because the jury is aware that the prosecutor has prepared and presented the case and consequently, may have access to matters not in evidence . . . it is likely to infer that such matters precipitated the personal opinions. . . . However, [i]t is not improper for the prosecutor to comment upon the evidence presented at trial and to argue the inferences that the jurors might draw therefrom. . . . We must give the jury the credit of being able to differentiate between argument on the evidence and attempts to persuade them to draw inferences in the state's favor, on one hand, and improper unsworn testimony, with the suggestion of secret knowledge, on the other hand. The [prosecutor] should

not be put in the rhetorical straitjacket of always using the passive voice, or continually emphasizing that he [or she] is simply saying I submit to you that this is what the evidence shows, or the like." (Internal quotation marks omitted.) *State* v. *Ciullo*, 314 Conn. 28, 40–41, 100 A.3d 779 (2014).

"A prosecutor's mere use of the words honest, credible, or truthful does not, per se, establish prosecutorial impropriety. . . . The distinguishing characteristic of impropriety in this circumstance is whether the prosecutor asks the jury to believe the testimony of the state's witnesses because the state thinks it is true, on the one hand, or whether the prosecutor asks the jury to believe it because logic reasonably thus dictates." (Citation omitted; internal quotation marks omitted.) *State* v. *Fasanelli*, 163 Conn. App. 170, 186, 133 A.3d 921 (2016).

Further, "[i]t is well established that a prosecutor may argue about the credibility of witnesses, as long as her assertions are based on evidence presented at trial and reasonable inferences that jurors might draw therefrom." (Internal quotation marks omitted.) *State* v. *Ciullo*, supra, 314 Conn. 45. "Moreover, we have held that [i]t is permissible for a prosecutor to explain that a witness either has or does not have a motive to lie." (Internal quotation marks omitted.) *State* v. *Reddick*, 174 Conn. App. 536, 562, 166 A.3d 754, cert. denied, 327 Conn. 921, 171 A.3d 58 (2017), cert. denied,     U.S.    , 138 S. Ct. 1027, 200 L. Ed. 2d 285 (2018).

With those principles in mind, we conclude that in this case the prosecutor's comments were not improper. The prosecutor's statements in both closing arguments concerning the credibility of the victim "when placed in the context in which they were made, are reasonable inferences the jury could have drawn from the evidence adduced at trial." *State* v. *Ciullo*, supra, 314 Conn. 42. The prosecutor properly argued that the jury should assess the evidence and testimony adduced at trial and that such review would lead to the conclusion that the victim was credible. Simply because the prosecutor used the word "credible" in her argument does not establish prosecutorial impropriety. See *State* v. *Fasanelli*, supra, 163 Conn. App. 186. Thus, the context shows that these statements were not improper.

Likewise, we find that the challenged statement that the victim had no motive to lie was proper. "This court previously has concluded that the state may argue that its witnesses testified credibly, if such an argument is based on reasonable inferences drawn from the evidence. . . . Specifically, the state may argue that a witness has no motive to lie." (Citation omitted.) *State* v. *Warholic*, supra, 278 Conn. 365. At trial, there was evidence offered concerning the time frame of the defendant's relationship with the victim's mother and the victim's abusive home environment. The prosecu-

tor's statement asked the jury to recall this evidence and use it in their assessments of the victim's credibility. Moreover, it was the defendant's theory of defense that the evidence showed that the victim "made up" the allegations against the defendant, and the prosecutor was allowed to address this argument in her closing. We therefore conclude that the prosecutor's statements were proper argument.

C

Last, the defendant argues that the prosecutor acted improperly by eliciting comments on the credibility of the victim from the state's witnesses. Specifically, the defendant points to the testimony of Schweinsburg and Cuddy and argues that improper statements given during their respective direct examinations were the result of improper questioning by the prosecutor. The state argues that, regardless of whether the witness' testimony was improper, it was not given in response to improper questions from the prosecutor and, therefore, cannot be attributed to prosecutorial impropriety. We agree with the state.

During the prosecutor's direct examination of Schweinsburg, the witness testified as follows:

"[The Prosecutor]: Doctor, what did [the victim] look like to you as she was describing being sexually assaulted allegedly by [the defendant]?

"[The Witness]: She appeared to me to be a—telling a credible story.

"[Defense Counsel]: Objection.

"The Court: Sustain . . . . That last statement is stricken; disregard it. Doctor, please listen to the question that's asked.

"[The Prosecutor]: Doctor, I'm not asking for your assessment at this point.

"[The Witness]: Hm-hmm.

"[The Prosecutor]: We're just asking what did she look like.

"[The Witness]: Okay."

Schweinsburg proceeded to testify as to his physical observations of the victim. Thereafter, outside the presence of the jury, the court cautioned Schweinsburg and asked him to "direct [his] answers to the specific question that's asked."

The defendant further directs us to the prosecutor's direct examination of Cuddy:

"[The Prosecutor]: [I]n cases you personally have handled, and you indicated you've handled at least 200 . . . do those result in arrests every time?

"[The Witness]: No.

"[The Prosecutor]: And why not?

"[The Witness]: Because most of these crimes occur—there's no witnesses, there's no evidence, the statements get recanted. They're very hard cases to put together. You need to be able to prove that the timeline matches, the person matches, the child's story is legit. Any corroboration of anything, if the person was—you know—in the place where the child said the place was and other things happened, everything happened but the sexual event, it's pretty likely that the child is telling you the truth. So that's just part of the investigation.

"The Court: Just a second. That last statement is ordered stricken from the record. Jury disregard it.

"[The Witness]: Sorry, Your Honor."

Later in the direct examination, the prosecutor asked Cuddy "what was the end result of your investigation," whereby Cuddy responded that she "had probable cause." That comment was stricken by the court and the jury was instructed to disregard it. The prosecutor then asked Cuddy if she had arrested the defendant in October, 2015, and she responded in the affirmative.

In its final instructions to the jury, the court specifically addressed the testimony: "To the extent that Dr. Schweinsburg, Detective Cuddy, or any other witnesses, if any, may have commented either directly or indirectly in the course of testimony in court on the credibility of [the victim] or her accusations that are the subject of this trial, such testimony is stricken and you are not—and you are to disregard it. You are not to consider any such testimony when evaluating the evidence in this case, and any such comments . . . are to play absolutely no role in your deliberations . . . ."

"It is well established that a witness may not be asked to comment on the veracity of another witness' testimony. . . . Such questions are prohibited because determinations of credibility are for the jury, and not for witnesses. . . . Consequently, questions that ask a [witness] to comment on another witness' veracity invade the province of the jury. . . . [Q]uestions of this sort also create the risk that the jury may conclude that, in order to acquit the defendant, it must find that the witness has lied. . . . A witness' testimony, however, can be unconvincing or wholly or partially incorrect for a number of reasons without any deliberate misrepresentation being involved. . . .

"Moreover, [w]e repeatedly have stated that an expert may not testify regarding the credibility of a particular victim. The reason is that such testimony may be viewed as a direct assertion that validate[s] the truthfulness of [the victim's] testimony." (Citations omitted; internal quotation marks omitted.) *State* v. *Ritrovato*, 280 Conn. 36, 64–65, 905 A.2d 1079 (2006); see also *State* v. *Taft*, supra, 306 Conn. 764; *State* v. *Singh*, 259 Conn. 693,

706–710, 793 A.2d 226 (2002).

The defense argues that this case is similar to *Ritrovato*. We disagree. In *Ritrovato*, the prosecutor asked the witness on redirect examination whether she found the victim's account of the incident to be "credible." *State* v. *Ritrovato*, supra, 280 Conn. 60 n.19. Here, the prosecutor did not ask either witness to comment on the credibility of the victim. The prosecutor made clear to Schweinsburg that she was attempting to elicit testimony concerning his observations of the victim's *physical* appearance, not his opinions of the victim's credibility.[6] Likewise, the first question to Cuddy at issue properly inquired as to her process in investigating similar allegations and elicited, in part, proper testimony. The second question to Cuddy at issue similarly was not improper but a permissive inquiry into the investigation of the defendant. Witnesses' inappropriate answers to otherwise proper questions do not constitute prosecutorial impropriety. We therefore conclude that the prosecutor did not improperly elicit comments on the credibility of the victim from the state's witnesses.

Because we conclude that no prosecutorial impropriety occurred, we need not consider whether the defendant was deprived of his due process right to a fair trial. See *State* v. *Reddick*, supra, 174 Conn. App. 563.

II

The defendant's second claim is that the evidence was insufficient to support the mandatory minimum sentence imposed by the court under § 53a-70 (b) (2). Specifically, the defendant argues that the state failed to produce sufficient evidence regarding the age of the victim at the time of the sexual assault as alleged in count one. We disagree.

The following procedural history is relevant to the resolution of this claim. The jury was instructed on four counts against the defendant pursuant to the 2017 long form information. With respect to the first count, which alleged sexual assault in the first degree in violation of § 53a-70 (a) (2), the jury was provided with an instruction that if it found that the state had proven all the elements of the offense beyond a reasonable doubt, it was to further make a separate and specific finding, by means of a written interrogatory, as to whether the state had "proven beyond a reasonable doubt, that the complainant was less than ten years of age at the time of the offense alleged." The purpose of this written interrogatory was to determine the defendant's statutory minimum sentence pursuant to § 53a-70 (b) (2).[7] See *State* v. *Kirk R.*, 271 Conn. 499, 512, 857 A.2d 908 (2004) (determining that factual question of whether victim was under ten years of age at time of violation of § 53a-70 (a) is to be determined by jury). The jury answered the written interrogatory in the affirmative and the defendant subsequently was sentenced to ten

years of incarceration in accordance with the statutory minimum on this count.

The defendant argues that there was insufficient evidence for the jury to find beyond a reasonable doubt that the victim was under ten years of age at the time of the first sexual assault. Specifically, he contends that the victim's testimony was inconsistent with other evidence adduced at trial such that the jury could not have found that the victim was under ten years of age at the time of the first sexual assault. The defendant does not dispute that there was sufficient evidence to prove that the victim was under sixteen years of age at the time of the offense and asks us to remand this case to the trial court to resentence the defendant to a five year mandatory sentence on this count. See General Statutes § 53a-70 (b) (2). The state argues that, on the basis of the testimony of the victim at trial, the jury reasonably could have inferred that the victim was under ten years old at the time of the first offense. We agree with the state.

Although this claim was not preserved at trial, it is reviewable. "Unpreserved sufficiency claims are reviewable on appeal because such claims implicate a defendant's federal constitutional right not to be convicted of a crime upon insufficient proof. . . . Our Supreme Court has stated that *Jackson* v. *Virginia*, [443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)], compels the conclusion that any defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of [*State* v. *Golding*, supra, 213 Conn. 239–40]. . . . Thus . . . there is no practical reason for engaging in a *Golding* analysis of a claim based on the sufficiency of the evidence. . . . We will review the defendant's challenge to the sufficiency of the evidence as we do any properly preserved claim." (Citation omitted; internal quotation marks omitted.) *State* v. *Cyrta*, 107 Conn. App. 656, 659–60, 946 A.2d 288, cert. denied, 288 Conn. 912, 954 A.2d 185 (2008).

The standard of review for sufficiency of the evidence claims is well established. "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a [two part] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . We note that the [finder of fact] must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the [finder of fact] to conclude

that a basic fact or an inferred fact is true, the [finder of fact] is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"When there is conflicting evidence . . . it is the exclusive province of the . . . trier of fact, to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony. . . . Questions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . We must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude . . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *Daniel G.*, 147 Conn. App. 523, 530–31, 84 A.3d 9, cert. denied, 311 Conn. 931, 87 A.3d 579 (2014).

The state relied primarily on the testimony of the victim at trial to prove that she was under the age of ten at the time of the first sexual assault. The victim testified that she was nine years old at the time of the first incident. She further testified that the third incident occurred on December 14, 2013, her eleventh birthday, that the second incident had occurred one year prior in the winter and that the first incident occurred in autumn.

The defendant argues that the victim was not "adamant" about her timeline of events and points to inconsistencies in the victim's testimony as well as to inconsistencies between the victim's timeline of events and other testimony and evidence adduced at trial. In support of his argument, the defendant cites the victim's statements made at trial that she "can't really remember the time [of the incidents]" and her statement in the July 8, 2015 forensic interview that she was ten at the time of the first incident. He also directs us to the testimony of Schweinsburg who testified that the victim told him in the June 18, 2015 interview that the incidents occurred between December, 2013 and February, 2014, a period in which the victim was more than ten years old.

"It is well settled . . . that [e]vidence is not insufficient . . . because it is conflicting or inconsistent. . . . Rather, the [finder of fact] [weighs] the conflicting evidence and . . . can decide what—all, none, or some—of a witness' testimony to accept or reject."

(Internal quotation marks omitted.) *State* v. *Montana*, 179 Conn. App. 261, 266, 178 A.3d 1119, cert. denied, 328 Conn. 911, 178 A.3d 1042 (2018).

Here, the victim testified that she was nine years old at the time of the first sexual assault.[8] This, in conjunction with her testimony concerning the dates of the other incidents, provided a sufficient evidentiary basis for the jury to answer the interrogatory in the affirmative. That conflicting evidence was proffered does not undermine our decision. "As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . [W]e must defer to the [finder] of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor, and attitude. . . . Credibility determinations are the exclusive province of the . . . fact finder, which we refuse to disturb." Id., 265–66. Furthermore, "[e]ven if uncorroborated, the victim's testimony, if believed, may be sufficient to support a guilty verdict." *State* v. *Antonio W.*, 109 Conn. App. 43, 53, 950 A.2d 580, cert. denied, 289 Conn. 923, 958 A.2d 153 (2008). The jury was presented with conflicting evidence as to the victim's age at the time of the first sexual assault and was free to believe the victim's testimony that she was nine years old at the time. See *State* v. *Montana*, supra, 179 Conn. App. 266. Because we conclude that the evidence was sufficient to support the jury's finding, we reject the defendant's claim.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date the appeal was submitted on briefs.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to identify the victim or others through whom victim's identity may be ascertained. See General Statutes § 54-86e.

[2] General Statutes § 53a-70 (b) (2) provides in relevant part: "Any person found guilty under said subdivision (1) or (2) shall be sentenced to a term of imprisonment of which ten years of the sentence imposed may not be suspended or reduced by the court if the victim is under ten years of age or of which five years of the sentence imposed may not be suspended or reduced by the court if the victim is under sixteen years of age."

[3] As part of this claim, the defendant also argues that the prosecutor acted improperly by referring to the complainant as the "victim" during the voir dire of two venirepersons. The state correctly notes that neither of these venirepersons actually served on the jury. We agree with the state that because neither of the venirepersons served on the jury, these alleged instances of impropriety cannot have unduly influenced the jury's decision making or otherwise denied the defendant his due process right to a fair trial. See *State* v. *Thompson*, 146 Conn. App. 249, 268–69, 76 A.3d 273 (noting that prosecutor referring to complainant as "victim" risks improper communication *to jury*), cert. denied, 310 Conn. 956, 81 A.3d 1182 (2013). We therefore conclude that this argument is without merit.

[4] Indeed, before the court began to deliver its final instruction to the jury it expressly addressed this issue: "Before I begin, there is one thing I need to address with respect to the arguments of counsel. To the extent the state in any part of its argument referred to [the complainant] as the 'victim,' I instruct you that the use of that term was improper and you are to disregard it. It is your responsibility alone to determine whether the state has proven any of these allegations beyond a reasonable doubt." Although the court told the jury that the prosecutor's use of the word "victim" was improper, that is not the same as concluding that the prosecutor engaged in prosecutorial

impropriety. As noted previously in this opinion, isolated instances of the use of improper language is typically insufficient to support a conclusion that there was prosecutorial impropriety.

[5] Further, with respect to the prosecutor's comments that the complainant was the "perfect victim," we note that in *State* v. *Ceballos*, 266 Conn. 364, 832 A.2d 14 (2003), our Supreme Court concluded that the prosecutor's comments about the claimant being the "perfect victim" because of her childhood and living conditions constituted a proper argument concerning the defendant's opportunity to commit the alleged offenses and were not improper appeals to the jurors' emotions. Id., 394–95. Here, the prosecutor referred to the complainant as the "perfect victim" in an analogous manner, to argue that the circumstances surrounding the alleged offenses—i.e., the defendant's position of authority as her mother's boyfriend, and an unstable home environment—made the complainant vulnerable. These two comments by themselves constituted proper argument.

[6] Indeed, defense counsel did not object to Schweinsburg's eventual testimony regarding his observations of the victim's mannerisms.

[7] See footnote 2 of this opinion.

[8] The victim testified as follows:

"Q. Let me ask you—let's go slow. The first time, you were living at . . . .

"A. Yes.

"Q. Okay. And do you remember this first time, how old were you, when this first thing happened to you?"

"A. Nine.

"Q. Okay. Do you remember a specific date, or anything about when the date the first time happened was?

"A. No

"Q. Okay. But you know you were about nine years old?

"A. Yes."